UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA GARCIA, et al., )<br>               Plaintiffs, )<br>-v- )<br>    )<br>    )<br>ALTICOR, INC., et al., )<br>               Defendants. )<br>    ) | No. 1:20-cv-1078<br><br>Honorable Paul L. Maloney |

## ORDER

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' complaint (ECF No. 11). For the reasons to be explained, the motion will be denied.

### I.

Defendants in this case are Alticor, Inc. ("Amway"),[1] the Board of Directors of Alticor (the "Board"), and the Fiduciary Committee of Alticor, Inc., (the "Committee"). The three named Plaintiffs (Joshua Garcia, Andrea Brandt, and Howard Hart) are now-retired Amway employees who participated in Amway's defined-contribution 401(k) plan (the "Plan") while they were employed by Amway.[2] The Plan is a defined-contribution plan, meaning participants' benefits are limited to the value of their investment accounts, which is determined by the market performance of employee and employer contributions, less expenses (Complaint, ECF No. 1 at ¶ 46). Plan participants may only invest in the investment

---

[1] Alticor is the corporate parent of the Amway family of businesses (Complaint, ECF No. 1 at ¶ 22). The Court uses the same naming convention that Plaintiffs use in their Complaint.

[2] At the outset, the Court notes that these Plaintiffs are represented by the same counsel as plaintiffs in a similar lawsuit before this Court: *McNeilly v. Spectrum Health System*, No. 20-cv-870 (W.D. Mich.). The Court recently decided a motion to dismiss in that case on very similar grounds, and borrows much of the language in this opinion from the *McNeilly* opinion (*see* ECF No. 21 in *McNeilly*).

options on the Plan's investment menu, but the Plan offers employees a range of options to invest in: during the relevant time period, the Plan has offered 22 to 23 investment options. The Plan has had at least a billion dollars in assets under management at all relevant times; on December 31, 2018, it had $1.19 billion dollars (*Id.* at ¶ 56).

The Committee is the Plan's fiduciary and overseer: the Committee is responsible for selecting and monitoring the investments in the Plan (*Id.* at ¶ 33). The Committee has the authority to select, monitor, evaluate, and modify the Plan's investments, subject to the ultimate oversight and direction of Amway (*Id.* at ¶¶ 34, 55). The essence of the complaint is that the Committee did not give adequate attention to the investments in the Plan: Plaintiffs challenge the performance and/or fees of many of the investment options that the Plan has included since 2014 (*Id.* at ¶¶ 139-145).

A brief overview of the types of relevant fees is helpful. Investment-management fees are ongoing charges for managing the assets in the investment fund. These are often expressed in the form of an "expense ratio" which is a percentage deduction against a participant's total assets in their investment (*Id.* at ¶ 70). For example, a participant who invests $1,000 in a fund with an expense ratio of 0.10% will pay an annual fee of $1,000 x 0.001 = $1. Recordkeeping fees cover the "day-to-day" expenses of keeping the funds running (*Id.* at ¶ 63). One way to charge recordkeeping fees is via revenue sharing, which allows mutual funds to pay the administrator via the performance of the fund (*Id.*). For example, if an investment's expense ratio is 0.40%, the investment manager would "share" (pay) a portion of the 0.40% fee ("revenue") it collects with the plan's recordkeeper for the services that the recordkeeper provides.

Plaintiffs allege that the Committee's failure to even attempt to provide better investments was a breach of the fiduciary duties of loyalty and prudence (Count I). Plaintiffs also allege that Amway and the Board did not sufficiently monitor the Committee's decisions and actions (Count II). Plaintiffs have filed this action as a putative class action.

On March 3, 2021, Defendants filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted (ECF No. 11). Plaintiffs responded (ECF No. 14), Defendants replied (ECF No. 20), and the parties have each filed a document titled "Notice of Supplemental Authority" (ECF Nos. 16, 21). The Court has considered all of these pleadings and determined that oral argument on the motion to dismiss is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## II.

When challenged by a motion filed under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church and School*, 597 F.3d 769, 776 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171 (2012). A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, the allegations in the complaint are not afforded a presumption of

truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists. *Id.*

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face." *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). If plaintiffs do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. For Bio-Ethical Reform*, 648 F.3d

4

at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; rather, "it must assert sufficient facts to prove the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

### III.

### A.

Defendants argue that Plaintiff Howard Hart does not have standing. To satisfy the "irreducible constitutional minimum of standing" and demonstrate that a case or controversy exists, a plaintiff must establish that he has suffered: 1) a concrete and particularized, actual or imminent injury in fact; 2) a causal connection between the injury and the conduct complained of; and 3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants' argument here is somewhat confusing, because they do not dispute that Hart has standing to bring a claim based on excessive recordkeeping fees (*see* Reply Brief, ECF No. 20 at PageID.1354 n.20), instead arguing that he cannot bring a claim based on selection of challenged funds. But those are both arguments in Count I of Plaintiffs' complaint. The Court declines to split Plaintiffs' causes of action at this stage. Given Defendants' concession that Hart may have been injured by excessive fees, the Court concludes that Hart has satisfied the requirements of Article III because he has alleged actual

injury to his Plan accounts. This injury is fairly traceable to Defendants' conduct, a causal connection between Defendants' alleged conduct and Hart's losses exists, and Hart has demonstrated a likelihood that his injuries will be redressed by a favorable judgment. Thus, the Court will deny the portion of the motion to dismiss based on subject-matter jurisdiction.

**B.**

That brings the Court to the merits of Plaintiffs' claims. At the outset, the Court rejects Defendants' argument that because Plaintiffs have retained counsel that have filed factually similar cases, their allegations are so generic that they cannot survive a motion to dismiss. There is no rule against hiring counsel that specialize in one cause of action or type of lawsuit, and the Court declines to dismiss the complaint on this ground alone.

The Court will first consider the allegation that the Committee breached the duty of prudence. Under 29 U.S.C. § 1104(a)(1),

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-- ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;....

Thus, ERISA requires the fiduciary of a pension plan to act prudently in managing the plan's assets. *Pfeil v. State Street Bank and Trust Co.*, 806 F.3d 377, 383 (6th Cir. 2015). "The test for determining whether a fiduciary has satisfied his duty of prudence is whether the individual trustees, at the time they were engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Id.* at 384 (quoting *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 723 (6th Cir. 2000) (quotation marks omitted)). This test is one of conduct, not of results, and a plaintiff

6

must plausibly allege actions that were objectively unreasonable. *Ellis v. Fidelity Mgmt. Trust Co.*, 883 F.3d 1, 10 (1st Cir. 2018); *see also Davis v. Magna International*, No. 20-11060, 2021 WL 1212579, at *6 (E.D. Mich. Mar. 31, 2021); *Miller v. AutoZone, Inc.*, No. 2:19-cv-2779, 2020 WL 6479564, at *3 (W.D. Tenn. Sept. 18, 2020).

Notably, "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). This has resulted in courts reading ERISA plaintiffs' complaints slightly more leniently, allowing discovery as long as plaintiffs have provided enough factual allegations to create reasonable inferences that defendants' process of selecting or monitoring funds was imprudent. *See, e.g., Pension Ben. Guar. Corp ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Investment Mgmt. Inc.*, 712 F.3d 705, 718-19 (2d Cir. 2013); *see also Magna*, 2021 WL 1212579, at *6; *AutoZone*, 2020 WL 6479564, at *3. Essentially, a plaintiff must plead facts sufficient to demonstrate that he is not going on a "fishing expedition," but the Court may also consider his limited access to information at this early stage. *Braden*, 588 F.3d at 598.

Broadly, Plaintiffs allege that Defendants failed to select the best investment options, either because the options offered had excessive fees, or because preferable alternatives were available. The complaint alleges that Defendants breached their duty of prudence by some combination of the following facts: the recordkeeping and administrative costs of the Plan were excessive; the majority of funds chosen by the Committee were more expensive than comparable funds; some funds underperformed; the Committee should have considered

7

whether lower-cost comparable collective trusts[3] were available; the Committee could and should have selected at least one identical but lower-cost share class;[4] the Committee failed to consider materially similar but cheaper, passively-managed alternatives, and that a reasonable investigation (which Plaintiffs allege was not done) would have revealed the existence of these preferable alternatives. Plaintiffs support each of these arguments with tables and charts comparing various investment options (*see, e.g.*, Complaint at ¶¶ 85, 86, 88). The Court finds that the arguments fit into two main categories: challenges to investment selections and challenges to fees imposed.

But before delving into the specifics of Plaintiffs' arguments, the Court must note the circuit split regarding what is necessary to plead a violation of ERISA's duty of prudence. The Third, Eighth, and Ninth Circuits have held that allegations regarding imprudent investment selections and excessive fees, such as the ones presented by Plaintiffs here, may state a claim for violation of ERISA.[5] The Sixth Circuit has not yet weighed in, but the Western District of Tennessee, the Middle District of Tennessee, and the Eastern District of Michigan have recently allowed similar claims to proceed.[6] The Seventh Circuit disagrees,

---

[3] The complaint defines collective trusts as investment vehicles that are
> administered by banks or trust companies, which assemble a mix of assets such as stocks, bonds and cash. Regulated by the Office of the Comptroller of the Currency rather than the Securities and Exchange Commission, collective trusts have simple disclosure requirements, and cannot advertise or issue formal prospectuses. As a result, their costs are much lower, with lower or no administrative costs, and lower or no marketing or advertising costs.

(Complaint, ¶ 91 n. 10).

[4] The complaint explains share classes as follows: "Many mutual funds offer multiple classes of shares in a single mutual fund that are targeted at different investors. There is no difference between share classes other than cost—the funds hold identical investments and have the same manager." (Complaint, ¶ 102).

[5] *See Davis v. Washington Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020); *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019); *Tibble v. Edison International*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015).

[6] *See Magna*, 2021 WL 1212579; *McCool v. AHS Mgmt. Co., Inc.*, No. 3:19-cv-01158, 2021 WL 826756 (M.D. Tenn. Mar. 4, 2021); *AutoZone*, 2020 WL 6479564.

8

but a petition for certiorari has been granted in the Seventh Circuit case. *See Hughes v. Northwestern Univ.*, No. 19-1401, 2021 WL 2742780 (Mem.) (July 2, 2021). Absent guidance from the Supreme Court or the Sixth Circuit, the Court finds the majority view to be more persuasive than the Seventh Circuit's position.

### Investment Options

Part of the duty of prudence under ERISA is a duty to exercise prudence in selecting investments, as well as an ongoing duty to monitor investments and remove imprudent ones. *Tibble v. Edison International,* 575 U.S. 523, 529 (2015). To establish a violation of this duty, a plaintiff must allege facts that, if true, "would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *St. Vincent*, 712 F.3d at 718.

The essence of this portion of Plaintiffs' claim is that the Committee retained a suite of actively managed target date funds[7] (the "Freedom Funds") despite the existence of lower cost and better performing investment options, primarily the FIAM Blend Target Date Funds ("FIAM Funds"). Plaintiffs allege that the fact that the Committee retained a worse investment option evidences the Committee's failure to monitor and review available investment options, which was a violation of its duty of prudence.

---

[7] Defendants explain target date funds as follows:
> The Freedom Funds are a suite of mutual funds, i.e., "target date funds," that invest a participant's contributions in a mix of stocks, bonds, and cash. Each fund's asset allocation—known as its glide path—is tailored based on a selected retirement date (in five-year increments, i.e., 2030, 2035, etc.) and gradually becomes more conservative over the participants' lifetime.

(Corrected Brief in Support of Motion to Dismiss, ECF No. 11 at PageID.1159).

Defendants bring several arguments in favor of dismissing this claim. First, Defendants argue that Plaintiffs' concession that the Plan changed from the Freedom Funds to the FIAM Funds in 2018 bars their claims entirely. Plaintiffs disagree, arguing that the FIAM Funds were available for eleven years before the switch was made, and Defendants breached their duty of prudence by not evaluating the investment landscape, identifying that the FIAM Funds were better options, and switching before 2018. The Court notes that a fiduciary has a constant duty to replace imprudent investments. *Tibble*, 575 U.S. at 529. The fact that Defendants eventually moved to the FIAM Funds does not give rise to a blanket presumption of prudence, because Plaintiffs' allegation is that the action should have been taken earlier. S*ee, e.g., Johnson v. Fujitsu Technology and Business of America, Inc.*, 250 F. Supp. 3d 460, 466 (N.D. Cal. 2017) (finding that allegations regarding imprudence in 2013 and 2014 remained plausible despite removal of the plan's administrator in 2015). The 2018 change does not require dismissal of Plaintiffs' claims.

Second, Defendants argue that they were not required to cater to Plaintiffs' specific investment preferences, noting that ERISA does not mandate certain that funds (or even a certain mix of funds) are provided to employee-investors. To be sure, nothing in ERISA requires a fiduciary to find and offer only the cheapest funds. *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). Nor does anything in ERISA require plan fiduciaries to include any particular mix of investment vehicles in their plan. *In re Honda of America Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 866 (S.D. Ohio 2009). Defendants argue that they provided a sufficient mix of investment options, so if Plaintiffs wished to invest in a low-cost, passively managed fund or collective trust, they could have. In response, Plaintiffs argue

that given the availability of less costly and better performing alternatives, Defendants did not satisfy their fiduciary duty to consider the power of the Plan to obtain "favorable" investment products. *Sweda*, 923 F.3d at 329. This is because simply having a "mix and range" of investment options, including those with varying expense ratios, is insufficient to dismiss a complaint because to do so "would insulate from liability every fiduciary who, although imprudent, initially selected a 'mix and range' of investment options." *Id.* at 334; *see also Tussey v. ABB, Inc.*, 746 F.3d 327, 335-36 (8th Cir. 2014).

At this stage, the Court concludes that Plaintiffs' allegations are enough to survive the motion to dismiss: Plaintiffs allege that not only did Defendants provide unsuitable investments, they failed to sufficiently consider other alternatives. The *Sweda* logic is persuasive: If Defendants can skirt an allegation of imprudence simply by providing a "mix and range" of investment options, that would allow every imprudent fiduciary to avoid discovery simply because they offered at least one low-cost plan.

Next, Defendants argue that Plaintiffs cannot state a viable claim based on the comparisons they draw in the complaint because those comparisons are not perfect comparisons. Defendants focus on the different stock options involved in each fund and its comparator fund, arguing that the facts and evidence attached to their motion show that the proposed comparator funds are too distinct to be adequate comparisons. However, if anything, this makes clear that discovery is necessary: whether a certain fund is a good comparator for another fund is clearly a fact-intensive issue, and the Court cannot rule as a matter of law that the funds Plaintiff has identified as comparators are improper. *See, e.g., Nicolas v. Trustees of Princeton Univ.*, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017) (an

11

inquiry into whether the alternative funds plaintiffs suggest are apt comparisons raise factual questions that "do not warrant dismissal—to the contrary, they suggest the need for further information from both parties."); *see also Magna*, 2021 WL 1212579, at *7.

Relatedly, Defendants contest each of Plaintiffs' proffered reasons for why their preferred funds are "better" investment options than the funds provided by the Plan. But, as with the meaningful-comparator argument, each of these arguments presents a detailed question of fact, relating to individual funds' performance, risk allocation, MorningStar rating, and outflow of assets. The Court declines to rule as a matter of law that Plaintiffs have improperly identified "better" funds. Indeed, more information and a full evaluation of the relevant facts are necessary before the Court is prepared to rule on this issue.

Defendants also argue that Plaintiffs' argument regarding the single fund that could have been replaced with an identical but lower-cost share class is improper because Plaintiffs challenge the fee data for a fund that was not ever offered by the Plan. Plaintiffs have identified the Vanguard Small-Cap *Growth* Index Fund as having allegedly excessive fees, but Defendants contend that the Plan only offers the Vanguard Small-Cap Index Fund. The record is unclear which is true: the publicly filed Form 5500s[8] show that Defendants offered the Growth fund, but Defendants have provided documents that show that they did not offer the Growth fund (contrast ECF No. 9-6 with ECF Nos. 9-8 though 9-14). There is a clear dispute of material fact, unsuitable for resolution at this early stage. Thus, the Court will

---

[8] This Opinion relies largely on just the Complaint and the well-pleaded allegations contained therein, despite both parties' requests that the Court take judicial notice of over 1,000 pages of supporting evidence. In this discrete instance, the Court has referred to publicly filed documents (these 5500s) as part of its decision. *See In re Omnicare, Inc. Securities Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

accept Plaintiffs' allegation that there existed a fund that could have been replaced with an identical-but-cheaper share class. This survives the motion to dismiss because courts examining this issue have concluded that investment in a retail class fund where an identical institutional class fund with lower fees is available raises a plausible allegation that the Plan's administrator violated the duty of prudence. *Washington Univ.*, 960 F.3d at 483; *Disselkamp v. Norton Healthcare, Inc.*, No. 3:18-cv-48, 2019 WL 3536038, at * 4-5 (W.D. Ky., Aug. 2, 2019). Whether the fiduciary failed to leverage its size to negotiate a cheaper cost or was simply "asleep at the wheel" and failed to notice cheaper options is irrelevant: either way is sufficient to state a claim for breach of duty of prudence. *Washington Univ.*, 960 F.3d at 483. Thus, the allegation that identical but cheaper funds were available is sufficient to survive the present motion. Indeed, "a prudent fiduciary – who indisputably has knowledge of institutional share classes and that such share classes provide identical investments at lower costs" should "switch share classes immediately." *Tibble v. Edison International,* No. 07-5359, 2017 WL 3523737, at *13 (C.D. Cal., Aug. 16, 2017).

Finally, Defendants argue that Plaintiffs cannot bring a "hindsight-based" claim to argue that some funds in the Plan were underperforming. ERISA's prudence standard is based on "circumstances then prevailing," so it is true that hindsight-based allegations are improper. 29 U.S.C. § 1104(a)(1)(B); *see also Graham v. Fearon*, 721 F. App'x 429, 437 (6th Cir. 2018). However, Plaintiffs bring allegations that the Committee failed for *years* to perform sufficient reviews or investigations into the Plan's performance. Thus, it is plausible that Defendants had access to performance data at various points throughout the relevant period, and Plaintiffs' allegation is that Defendants did not adequately consider that

13

information. If this allegation is true, it is a breach of ERISA: The Supreme Court requires fiduciaries to continually monitor investments from the time the investments are selected to every moment during the Class Period. *See Tibble*, 575 U.S. at 529. Given that the Plaintiffs cannot see into Defendants' review process without the benefit of discovery, the Court finds that this issue is also sufficiently pleaded to withstand the motion to dismiss.

It is worth mentioning that Defendants slice-and-dice Plaintiffs' complaint. They take each allegation separately to attack them individually. The Court finds, as outlined above, that the motion to dismiss fails when considered in that way. But the Court must note that reading the complaint as a whole makes more sense: The "bigger picture" is the allegation that the Committee was not reviewing the Plan's options regularly, not acting in the best interest of Amway's employees, and using higher-cost vehicles to pay for revenue sharing. Taken together, Plaintiffs plausibly allege that the Committee breached its duty of prudence, so the motion to dismiss Count I will be denied. *See, e.g., McGowan v. Barnabas Health, Inc.*, No. 20-13119, 2021 WL 1399870, at *6 (D.N.J. Apr. 13, 2021) ("The complaint should not be parsed piece by piece to determine whether each allegation, in isolation, is plausible."). The Court reiterates that evaluation of Plaintiffs' claims will require "examination of particular circumstances, specific decisions, and the context of those decisions," which necessarily present questions of fact that cannot be resolved on a motion to dismiss. *McCool*, 2021 WL 826756, at *5. Taking Plaintiffs' allegations together with the reasonable inferences and suggested comparisons, the Court finds that Plaintiffs have pleaded sufficient facts regarding investment options for that portion of Count I to proceed past Defendants' motion to dismiss.

### Fees Imposed

"It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks." *Tibble v. Edison International*, 843 F.3d 1187, 1198 (9th Cir. 2016). "[A] fiduciary's failure to ensure that record-keepers charged appropriate fees and did not receive overpayments may be a violation of ERISA." *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1065 (M.D. Tenn. 2018); *see also Sweda*, 923 F.3d at 328. As above, the "question whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss." *Id.* at 1064.

Plaintiffs allege that the recordkeeping and administrative costs ranged from $201.53 per participant up to $335.09 per participant (Complaint at ¶ 66). Plaintiffs allege that comparable services were available for $35 per participant (*Id.* at ¶ 69). Plaintiffs allege that the Committee failed to ever investigate whether a different recordkeeper could provide lower fees (*Id.* at 72). Plaintiffs note that the recordkeeping fee market is competitive and fees, on average, are declining, so the reasonable inference is that the Committee's processes for selecting a recordkeeper and their review process for retention of the recordkeeper was flawed. Based on these arguments, the Court finds that the complaint adequately pleads a claim for breach of ERISA's duty of prudence. The facts Plaintiffs have alleged lead to the plausible inference that Defendants' review process was flawed, and that the Committee failed to adequately monitor the Plan's fees and expenses.

Defendants make several arguments to avoid this conclusion. They first argue that the recordkeeping fees cited in Plaintiffs' complaint are improperly calculated, so the Court

15

should dismiss this claim outright. Defendants argue that Plaintiffs have relied on improper documents or the wrong figures for "indirect payments" in their calculations. But the Court is bound to take Plaintiff's well-pleaded factual allegations as true, and this is a factual, not a legal, allegation. Thus, Defendants present an argument based on a question of fact, ill-suited for the motion to dismiss stage. But even accepting Defendants' argument as true—that only the "hard dollar" fee payment is the appropriate fee for the Court to consider—and dividing just the "hard dollar" payments by the number of Plan participants results in per participant fees ranging from $9 in 2014 to $85 in 2018. This supports Plaintiffs' allegation that the Plan charged excessive fees when compared to Plaintiffs' allegation that fees are decreasing year-to-year, not increasing, and that reasonable rates typically average around $35 per participant. That argument supports an inference that Defendants acted imprudently and survives the motion to dismiss.

Next, Defendants argue that Plaintiffs' allegations do not support an imprudence claim. Defendants condense Plaintiffs' argument down to three claims: 1) that revenue sharing is improper; 2) that dissimilar plans paid less, on average, for recordkeeping; and 3) that the Committee should have conducted a request for proposal ("RFP") for recordkeeping services. These, Defendants argue, are insufficient. The Court disagrees.

First, Defendants attack Plaintiffs' allegations that the recordkeeping fee structure itself was improper, arguing that revenue sharing is perfectly lawful. This legal statement is true. *See, e.g., Divane v. Northwestern Univ.*, 953 F.3d 980, 985 (7th Cir. 2020) (holding that there is "nothing wrong—for ERISA purposes—with plan participants paying recordkeeper costs through expense ratios."). But Plaintiffs do not allege that revenue sharing

16

is *per se* improper; instead, they argue that that Defendants used higher-cost investments to generate revenue sharing to pay for the Plan (Complaint at ¶¶ 70, 136). The fact that Defendants retained higher-cost shares to provide more basis for revenue sharing supports the inference that funds were not selected on their merits. *See, e.g., AutoZone*, 2020 WL 6479564, at *9. Taken to its most extreme, Plaintiffs' allegation is that Defendants chose higher-cost share classes to generate higher revenues for Fidelity, without regard for the participants' best interest. This clearly would be a breach of the duty of prudence. The Court passes no judgment on whether this is what occurred or not, but the allegation is plausible, and Defendants remain able to disprove the allegation with the benefit of a developed record at summary judgment or trial.

Second, Defendants argue that Plaintiffs have chosen dissimilar plans as comparators. Similarly, Defendants reject Plaintiffs' choice to compare the Fund's investment options with Investment Company Institute fee data because that data is an inapt comparison. As with the comparator-fund issue discussed above, this presents a fact-intensive analysis, inappropriate for the motion to dismiss stage.

Third, Defendants argue that nothing in ERISA compels periodic competitive bidding, so a claim alleging that the Committee did not conduct an RFP does not support a claim that recordkeeping fees were excessive. If this were the sole allegation in Plaintiffs' complaint, perhaps dismissal would be warranted. But it is not: Plaintiffs allege that the fees were excessive, the investment options poor, and the Committee never so much as sought an RFP to evaluate whether they were providing employees with reasonably low fees. The Court finds that this allegation, taken together with the rest of Plaintiffs' complaint, supports

17

the reasonable inference that Defendants were not acting in Plaintiffs' best interest. *See, e.g., Short v. Brown Univ.*, 320 F. Supp. 3d 363, 370 (D. R.I. 2018) ("Plaintiffs' claim that a prudent fiduciary in like circumstances would have solicited competitive bids plausibly alleges a breach of the duty of prudence.").

Finally, Defendants note that Plaintiffs admit that the Plan has been altered to obtain an annual administration fee of $53 per participant as of May 2020 (Complaint at ¶ 73). Defendants believe this is fatal to Plaintiffs' claim. Not so. Taking the complaint in the light most favorable to Plaintiffs, the inference is still that the Plans' fees were excessive prior to May 2020, and they are still excessive based on Plaintiffs' allegation that the market average fee is $35 per person. Indeed, this may indicate a breach of fiduciary duty, given that Defendants had an ongoing duty to monitor the Plan's expenses. *See, e.g., Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*, 2017 WL 2909408, at *3 (C.D. Cal. May 1, 2017) (Because Starwood failed to exercise bargaining power to obtain lower fees for many years... "viewed in the light most favorable to Plaintiffs, the Court can infer from these facts that Starwood's recordkeeping and administrative fees were excessive prior to 2015 and are still excessive."). Taking this fact together with Plaintiffs' other allegations regarding excessive fees, the Court finds this claim plausible, and it will survive the motion to dismiss.

The Court finds that Plaintiffs' complaint sufficiently states a claim for breach of the fiduciary duty of prudence in Count I.

## C.

Count I also charges the Committee with breaching ERISA's duty of loyalty. "To state a claim for breach of the duty of loyalty, a plaintiff must do more than allege that a defendant

18

failed to act for the exclusive purpose of providing benefits to participants. Rather, a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose of providing benefits to itself or someone else.*" *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-CV-6685, 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019) (citations omitted).

Defendants argue that there are no allegations that Amway or the Plan acted in a way to benefit themselves. In response, Plaintiffs argue that Defendants chose a combination of high-cost investments and a revenue-sharing fee structure to use a portion of the fees to pay Fidelity's inflated fees. Plaintiffs argue that these facts support the inference that Defendants acted in a way that would save itself costs at the expense of the Plan's participants, or in a way that favored Fidelity over the Plan's participants. Either reason is inconsistent with the duty of loyalty. *See, e.g., Johnson v. Providence Health & Serv.*, No. C17-1779, 2018 WL 1427421, at *9 (W.D. Wash. Mar. 22, 2018) ("While the complaint provides no direct evidence of self-dealing or preferential treatment for Fidelity, the inclusion and retention of various Fidelity investment products is circumstantial evidence that Defendants did not act "with an eye single toward beneficiaries' interests."); *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1356 (N.D. Ga. May 10, 2017) ("Whether the [p]lans' fiduciaries intended to benefit TIAA, Fidelity, and Vanguard is an issue than can be better determined at the motion for summary judgment stage.").

The Court finds Plaintiffs' arguments convincing, and Defendant has made no persuasive counterargument. Therefore, the motion to dismiss will be denied as to the remaining portion of Count I.

### D.

Count II alleges that the Board and Alticor failed to monitor the Committee's actions. Again, Defendants seek dismissal of this claim because they seek dismissal of Count I: if there was no substantive breach by the Committee, there could not have been a failure to monitor the Committee by the other Defendants. They do not raise any other argument here. Given that the allegations in Count I are plausible, and no other argument was made against Count II, the Court finds that Count II should not be dismissed at this stage. *See, e.g., Disselkamp*, 2019 WL 3536038, at *11 ("Plaintiffs, however, need not directly assert actions by Defendants that demonstrate their failure to monitor to survive a motion to dismiss, so long as the Court can plausibly conclude from the surrounding factual circumstances that a violation occurred.").

### IV.

The Court finds that Plaintiffs' complaint withstands Defendants' motion to dismiss. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 11) is **DENIED**.

**IT IS SO ORDERED.**

Date: August 9, 2021 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge