# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| JOSHUA GARCIA, ANDREA P. BRANDT and HOWARD HART, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Civil Action No. 20-cv-01078 |
| Plaintiffs, | ) ) | Hon. Paul L. Maloney |
| v. | ) ) | Mag. Phillip J. Green |
| ALTICOR, INC., THE BOARD OF DIRECTORS OF ALTICOR, INC., THE FIDUCIARY COMMITTEE OF ALTICOR, INC., and JOHN DOES 1-30. | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S ORDER DENYING DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO CERTIFY THE ORDER ON DEFENDANTS' MOTION TO DISMISS FOR INTERLOCUTORY APPEAL <u>UNDER 28 U.S.C. § 1292(b)</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    STANDARD OF REVIEW .....................................................................................2

       A.     Motion for Reconsideration .......................................................................2

       B.     Certification for Interlocutory Appeal ......................................................3

III.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......................3

IV.    ARGUMENT .........................................................................................................4

       A.     The Sixth Circuit's Decisions in *CommonSpirit* and *TriHealth* are Not
              Intervening Changes in Controlling Law ..................................................4

       B.     Defendants Failed to Adequately Monitor the Plan's Recordkeeping
              Expenses ....................................................................................................4

       C.     Many of the Plan's Funds Had Investment Management Fees In Excess of
              Fees for Funds In Similarly-Sized Plans ..................................................8

       D.     Defendants Maintained Five Underperforming Funds In the Plan Form
              2014 through May 2020 .............................................................................8

       E.     Failure to Investigate Availability of Lower Cost Collective Trusts .......8

       F.     One of the Plan's Funds With Substantial Assets Was Not in the Lowest
              Fee Share Class Available to the Plan ......................................................9

       G.     Failure to Investigate Lower Cost Fidelity Passively Managed Funds .....9

       H.     Certification of the August 9, 2021 Order for Interlocutory Appeal Is
              Inappropriate ...........................................................................................11

V.     CONCLUSION ...................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Davie v. Mitchell*,
291 F.Supp.2d 573 (N.D. Ohio 2003 ............................................................2

*Davis v. Washington Univ.*,
960 F.3d 478 (8th Cir. 2020) ....................................................................11

*Dualite Sales & Servs., Inc. v. Moran Foods, Inc.*,
2005 WL 2372847 (S.D. Ohio Sept. 26, 2005) ..............................................4

*Forman v. TriHealth, Inc.*,
-- F.4th --, 2022 WL 2708993 (6th Cir. July 13, 2022) ......................... Passim

*Forman v. TriHealth*,
443 (6th Cir. 2022)....................................................................................6

*Hughes v. Northwestern University*,
2022 WL 2708993 (citing 142 S. Ct. at 742) ..............................................10

*Kollaritsch v. Mich. State Univ. Bd. Of Trs.*,
944 F.3d 613 ..............................................................................................5

*Kowalski v. Mich. State Univ.*,
2021 U.S. Dist. LEXIS 34376 (W.D. Mich. Feb. 24, 2021)...........................5

*MacArthur v. San Juan Cnty.*,
405 F.Supp.2d 1302 (D. Utah 2005)............................................................2

*Moler v. Univ. of Maryland Medical Sys., et al.*,
No. 1:21-cv-01824-JRR (D. Md. July 13, 2022) .........................................11

*Moler , v. Univ. of Maryland Medical Sys., et al.*,
2022 WL 2756290 .....................................................................................11

*Pegg v. Davis*,
2009 WL 5194436 (S.D. Ohio Dec. 22, 2009) ...........................................4, 5

*Reese v. BP Exploration, Inc.*,
6433 F.3d 681 (9th Cir. 2011) ...................................................................12

*Rodriguez v. Tenn. Laborers Health & Welfare Fund*,
89 Fed. Appx. 949 (6th Cir. 2004)................................................................2

*Smith v. CommonSpirit*,
37 F.4th 1160 (6th Cir. 2022) ............................................................................. Passim

*In re Trump*,
874 F.3d 948 (6th Cir. 2017) ................................................................................12

**STATUTES**

28 U.S.C. § 1292(b) ............................................................................................. Passim

**Other Sources**

*401k Averages Book* (20th ed. 2020) ........................................................................7

Employee Retirement Income Security Act of 1974 ("ERISA") ...................................................3

Plaintiffs Joshua Garcia, Andrea P. Brandt, and Howard Hardt (together, "Plaintiffs"), by and through their attorneys, respectfully submit this opposition to Defendants'[1] Reconsideration Motion.[2]

## I.     INTRODUCTION

The Court should deny Defendants' Reconsideration Motion of the Court's August 9, 2021 Order denying Defendants' motion to dismiss in its entirety (ECF No. 22).  The Order denied Defendants' motion to dismiss because, under the long-standing *Iqbal/Twombly* pleading standards, Plaintiffs more than adequately alleged facts to support claims that Defendants acted imprudently in administering the Plan.  The Reconsideration Motion does not set forth any valid basis for reconsideration or, alternatively, certification of the August 9, 2021 Order for interlocutory appeal.

First, the *Smith v. CommonSpirit*, 37 F.4th 1160 (6th Cir. 2022) and *Forman v. TriHealth, Inc.*, -- F.4th --, 2022 WL 2708993 (6th Cir. July 13, 2022) decisions do not constitute intervening changes in controlling law because neither case established a "bright line rule" regarding the claims ERISA plaintiffs can and cannot allege on behalf of a retirement plan.

Second, both cases represent narrow, case specific decisions that are wholly distinguishable from the present matter.

Third, the Court's August 9, 2021 Order does not meet the requirements of 28 U.S.C. § 1292(b) to warrant certification of the Order for interlocutory appeal because the Court's August

---

[1] "Defendants" refers collectively to Alticor, Inc. ("Alticor"), The Board of Directors of Alticor, Inc. ("Board"), and The Fiduciary Committee of Alticor, Inc. ("Committee"), and John Does 1-30.

[2] Defendants' Brief In Support of Defendants' Motion for Partial Reconsideration or, In the Alternative, to Certify the Order on Defendants' Motion to Dismiss for Interlocutory Appeal Under 28 U.S.C. § 1292(b) (ECF No. 39) is referred to herein as "Defs. Mem." or "Reconsideration Motion."  All references to "¶" or "Complaint" are to the Class Action Complaint (ECF No. 1).

9, 2021 Order does not raise novel legal issues that present a substantial ground for difference of opinion where reasonable jurists might disagree on an issue's resolution.  Rather, the issues present here involve only whether Plaintiffs have alleged enough facts to adequately plead a claim for breach of ERISA's fiduciary duties *in this case*.

As such, the Court should deny Defendants' Reconsideration Motion and alternative request for certification of the August 9, 2021 Order for interlocutory appeal.

## II.     STANDARD OF REVIEW

### A.  Motion for Reconsideration

The Sixth Circuit has stated, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004).  "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or, (3) a need to correct a clear error or prevent manifest injustice." *Id.*  "Motions for reconsideration are disfavored, and a motion for reconsideration is unfounded unless it either calls…attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully point)s out a manifest error of fact or law." *Davie v. Mitchell*, 291 F.Supp.2d 573, 634 (N.D. Ohio 2003.  As the court in *MacArthur v. San Juan Cnty. s*tated, a motion for reconsideration "do[es] not provide litigants with an opportunity for a 'second bite at the apple' or allow them like Emperor Nero, to 'fiddle as Rome burns', or license a litigation 'game of hopscotch', allowing parties to switch from one legal theory to a new one 'like a bee in search of honey.'" *MacArthur v. San Juan Cnty.*, 405 F.Supp.2d 1302, 1305-06 (D. Utah 2005).

### B.  Certification for Interlocutory Appeal

A district court may certify an order for interlocutory appeal if the following three conditions exist: "[1] the order involves a controlling question of law to which there is [2] substantial ground for difference of opinion and … [3] an immediate appeal may materially advance the termination of litigation."  28 U.S.C. § 1292(b).

## III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs commenced this action with the filing of a Class Action Complaint on November 9, 2020 (ECF No. 1).  In the Complaint, Plaintiffs allege Defendants breached their fiduciary duties under §§ 409 and 502 of ERISA,[3] 29 U.S.C. §§ 1109 and 1132, by, *inter alia*, (1) failing to administer the Plan in a prudent manner; (2) failing to adequately monitor the Plan's recordkeeping expenses; (3) selecting and retaining funds with investment management fees in excess of fees for funds in similarly-sized plans; (4) selecting and retaining five underperforming funds in the Plan from 2014 through May 2020; (5) failing to investigate the availability of lower cost collective trusts; one of the Plan's funds with substantial assets was not in the lowest fee share class available to the Plan; (6) failing to investigate certain lower cost passively managed funds; and (7) breaching their duty of loyalty to the Plan and its participants.  ¶¶ 58-138.  On February 19, 2021, Defendants filed their Motion to Dismiss Plaintiffs' Complaint Under FED. R. CIV. P. 12(b)(1) and 12(b)(6) (ECF No. 9).  On April 16, 2021, Plaintiffs filed their Brief In Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint Under FED. R. CIV. P. 12(b)(1) and 12(b)(6) (ECF No. 14).  Defendants filed a Reply In Support of Defendants' Motion to Dismiss Plaintiffs' Complaint Under FED. R. CIV. P. 12(b)(1) and 12(b)(6) on May 19, 2021 (ECF No. 20).  The Court denied Defendants' motion to dismiss in its entirety on August 9, 2021 (ECF No. 22).

---

[3] The Employee Retirement Income Security Act of 1974.

On July 19, 2022, Defendants filed the present Motion for Partial Reconsideration of the Court's Order Denying Defendants' Motion to Dismiss, or, In the Alternative, To Certify the Order On Defendants' Motion to Dismiss for Interlocutory Appeal Under 28 U.S.C. § 1292(b) (ECF No. 39).  Defendants ask this Court to reconsider its decision on the motion to dismiss alleging the Sixth Circuit's decisions in *Smith v. CommonSpirit*, 37 F.4th 1160 (6th Cir. 2022) and *Forman v. TriHealth, Inc.*, -- F.4th --, 2022 WL 2708993 (6th Cir. July 13, 2022), would have affected how the Court decided the motion to dismiss.  Defendants also filed a Motion to Stay Further Litigation Pending Resolution of Defendants' Motion for Partial Reconsideration or, In The Alternative, To Certify the Order on Defendants' Motion to Dismiss for Interlocutory Appeal Under 28 U.S.C. § 1292(b) on July 19, 2022 (ECF No. 40).  On July 21, 2022, the Court entered an Order instructing Plaintiffs to respond to Defendants' motion for reconsideration within fourteen (14) days (ECF No. 41).  Plaintiffs filed their Brief in Opposition to Defendants' Motion to Stay Further Litigation Pending Resolution of Defendants' Motion for Partial Reconsideration of the Court's Order Denying Defendants' Motion to Dismiss, or, In the Alternative, To Certify the Order On Defendants' Motion to Dismiss for Interlocutory Appeal Under 28 U.S.C. § 1292(b) (ECF No.42).

## IV.    ARGUMENT

### A.  The Sixth Circuit's Decisions in *CommonSpirit* and *TriHealth* are Not Intervening Changes in Controlling Law

"Motions for Reconsideration serve a limited function, and are generally only warranted when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."  *Pegg v. Davis*, 2009 WL 5194436, at *1 (S.D. Ohio Dec. 22, 2009) (citing *Dualite Sales & Servs., Inc. v. Moran Foods, Inc.*, 2005 WL 2372847, at *1 (S.D. Ohio Sept. 26, 2005)).  Motions for Reconsideration "are not intended to relitigate issues previously considered by the Court or to present evidence that could have been

4

raised earlier." *Pegg*, 2009 WL 5194436, at *1 (citing *J.P. v. Toft*, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006)).

Here, Defendants rely on the first factor: intervening change of controlling law.  But the decisions in *CommonSpirit* and *TriHealth* do not create the type of clear-cut rule regarding pleading requirements in breach of fiduciary duty cases that render the Court's August 9, 2021 Order one that constitutes a "palpable defect" under W.D.Mich. Local Civil Rule 7.4(a).  For example, in *Kowalski v. Mich. State Univ.*, 2021 U.S. Dist. LEXIS 34376 (W.D. Mich. Feb. 24, 2021), which Defendants cite, the court granted a motion for reconsideration because intervening law created a bright line rule that impacted the ultimate merits of the case.  In that case, the Sixth Circuit issued a decision that was "broad and clear, and its application to Kowalski's claim [wa]s straightforward." *Id.* at *4.  The court found under new Sixth Circuit guidance, "Kowalski must plead "[1] an incident of actionable sexual harassment, [2] the school's actual knowledge of it, [3] some further incident of actionable sexual harassment, [4] that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and that the Title IX injury is attributable to the post-actual-knowledge further harassment." *Id.* (citing *Kollaritsch*, 944 F.3d at 623-24).  The court concluded "Kowalski's claim only satisfies the first and second elements." *Id.*

No similar bright line rule was created by *CommonSpirit* or *TriHealth*.  While Defendants suggest the Sixth Circuit's decisions in *CommonSpirit* and *TriHealth* warrant a reevaluation of the August 2021 motion to dismiss decision, a closer reading of the Sixth Circuit's decisions demonstrates these cases are not instructive here.

First, the complaint in *CommonSpirit* boiled down to the following: "Yosaun Smith claims that her retirement plan should have offered a different mix of fund options, in particular that it

should have replaced actively managed mutual funds with passively managed mutual funds." *Id.* at 1162. More specifically, the plaintiff "mainly compares the Fidelity Freedom Funds' performance to the Fidelity Freedom Index Funds' performance for a five-year period, noting that the Freedom Funds trailed the Index Funds by as much as 0.63 percentage points per year." *Id.* at 1165.

In *TriHealth*, the plaintiffs alleged that eight of the plan's investment options "charged higher fees than 'available alternatives in the same investment style'" and "the subpar selection of investment options led to administrative fees that were too high for the plan as a whole." *TriHealth*, 40 F.4th 443 (6th Cir. 2022). Additionally, the plaintiffs claimed that the plan "failed to offer cheaper institutional shares instead of more expensive retail shares" for seventeen of the plan's mutual funds.

Here, Plaintiffs' Complaint alleges much more. Plaintiffs allege several factors, not just one or two, that give rise to a plausible inference that Defendants breached their fiduciary duties. The totality of circumstances included:

### B.  Defendants Failed to Adequately Monitor the Plan's Recordkeeping Expenses

The outrageous sums Defendants caused the Plan and participants to pay for recordkeeping and administrative services are one indication of their breach of their fiduciary duties. Fidelity is the Plan's recordkeeper and the Plan stayed with the same recordkeeper over the course of the Class Period. ¶ 66, 72. The Plan utilized revenue sharing to pay for recordkeeping which saddled Plan participants with excessive, above-market recordkeeping fees.  ¶ 65. While not *per se* imprudent, revenue sharing unchecked "is devastating for Plan participants." ¶ 64. The Plan's per participant recordkeeping fees as determined from the publicly filed Form 5500s during the Class Period were as follows:

| Year | Participants | Hard Dollar Payments - Fidelity | Indirect Payments – Fidelity | Total Comp to Fidelity | Per Participant Cost |
|------|-------------|-------------------------------|------------------------------|------------------------|----------------------|
| 2018 | 5,281 | $457,002 | $703,410 | $1,160,412 | $219.73 |
| 2017 | 5,318 | $404,870 | $1,302,536 | $1,707,406 | $321.06 |
| 2016 | 5,466 | $436,297 | $1,395,293 | $1,831,590 | $335.09 |
| 2015 | 5,564 | $205,610 | $1,021,477 | $1,227,087 | $220.54 |
| 2014 | 5,780 | $52,857 | $1,112,014 | $1,164,871 | $201.53 |

¶ 66.  It appears as of May 2020, the Plan obtained an annual administration Fee for Core Services charge of $53 per participant.  ¶ 73.  This amount was still above reasonable rates and only refers to a small portion of the fees actually charged for administration and recordkeeping.

According to a survey published by the *401k Averages Book* (20th ed. 2020), a plan with 2,000 participants and $200 million in assets has an average recordkeeping and administration cost (through direct compensation) of $5 per participant.  ¶ 68.  Looking at the above chart cited in the Complaint, direct recordkeeping costs (derived by dividing the Hard Dollar Payments by the number of participants) were as follows:

| Year | Participants | Hard Dollar Payments - Fidelity | Per Participant Direct Recordkeeping Costs |
|------|-------------|-------------------------------|---------------------------------------------|
| 2018 | 5,281 | $457,002 | $85 |
| 2017 | 5,318 | $404,870 | $76 |
| 2016 | 5,466 | $436,297 | $80 |
| 2015 | 5,564 | $205,610 | $37 |
| 2014 | 5,780 | $52,857 | $9.14 |

Thus, when making an apples-to-apples comparison of the Plan's direct recordkeeping costs, it had costs well above the $5 average plans with half as many participants and a fifth of the assets paid for recordkeeping.  ¶ 68.  In 2018 the Plan paid *seventeen times* this average.  Another frame of reference is from case law where it has been found billion-dollar plans can bargain for

low recordkeeping fees, with reasonable rates typically averaging around $35 per participant.  ¶ 69, n. 7.

### C. Many of the Plan's Funds Had Investment Management Fees In Excess of Fees for Funds in Similarly-Sized Plans

Another indication of Defendants' fiduciary breach is that several funds in the Plan were more expensive than comparable funds found in similarly sized plans (conservatively, plans having over $1 billion in assets).  *Id.* at ¶ 75.  The expense ratios for funds in the Plan had a difference of *246%* (in the case of Baron Growth Instl.) and a difference of *243%* (in the case of Hotchkis & Wiley Mid-Cap Value I) above the median expense ratios in the same category.  ¶ 85.  These same discrepancies existed when looking at average expense ratios.  ¶ 86.  Despite the excessive costs, Defendants failed to replace the imprudent funds during the Class Period.  ¶ 87.

### D. Defendants Maintained Five Underperforming Funds In the Plan From 2014 through May 2020

Yet another indication of Defendants' fiduciary breach is their failure to remove five underperforming funds until May of 2020: the Hotchkis & Wiley Mid-Cap Value I, American Funds Europacific Growth R6, Lazard Emerging Markets Equity Instl., Templeton Global Bond R6, and the T.Rowe Price New Era I.  ¶ 88.  All five funds underperformed in their 1-, 3-, 5-, and 10-year comparisons as of June 30, 2020.  *Id.*  Despite the funds' clear underperformance and excessive expense ratios, Defendants failed to replace the funds during the Class Period.  ¶ 89.

### E. Failure to Investigate Availability of Lower Cost Collective Trusts

A further indication of an imprudent monitoring process is Defendants' failure to timely consider nearly identical target date collective trusts offered by Fidelity to replace the Fidelity target dates in the Plan. These Fidelity collective trusts were available on the market in October 2007.  *Id.* at ¶ 93.  Prior to 2018, the Plan incurred excess fees due to Defendants' failure to

adequately investigate the availability of Fidelity collective trusts which had the same asset allocation as the Fidelity target date mutual funds in the Plan. *Id.* at ¶ 94. The Plan could have reaped considerable cost savings by using collective trusts given the Plan's significant concentration in Fidelity target date funds. *Id.* During the Class Period, at least thirteen of the Fidelity Freedom K target date funds in the Plan could have been converted to collective trusts. *Id.* at ¶ 95 (listing funds). The fees for the Plan's target date funds ranged from 27% to 103% more expensive than the collective trust version. *Id.*

### F. One of the Plan's Funds With Substantial Assets Was Not in the Lowest Fee Share Class Available to the Plan

During the Class Period, several funds in the Plan had identical lower share counterparts that were never selected by the Plan's fiduciaries. *Id.* at ¶ 101. The lower cost funds were identical in all ways except price. *Id.* at ¶ 102. For example, the Vanguard Small Cap Growth Index I cost 217% less than its **identical** counterpart, the Vanguard Small Cap Growth Index Inv which remained in the Plan despite its excessive fees. *Id.* at ¶ 104. Accordingly, the lower share class for the fund had greater net returns, lower financial risks, more services offered, and/or greater management flexibility than its more expensive counterpart. *Id.* at ¶ 107. Defendants claim this fund was never offered by the Plan. Yet the 2018 Form 5500 shows as of December 31, 2018 there was $40,293,856 worth of the Vanguard Small Cap Growth index fund in the Plan. *See* Defendants' Exhibit E, ECF 9-6, at p. 35 of 41; *see also* ¶ 104 (alleging same).

### G. Failure to Investigate Lower Cost Fidelity Passively Managed Funds

Finally, a further indication of an imprudent monitoring process, is Defendants failed to investigate the benefits vs. drawbacks of selecting available passively managed Fidelity target date index funds to replace the Fidelity funds already in the Plan. *Id.* at ¶ 112. Measured by several different benchmarks, actively managed funds vastly underperform passively managed

funds over long periods.  *Id.* at ¶¶ 115-129.  Here, specifically, almost all of the funds in the active Fidelity Freedom Suite underperformed the passively managed Freedom Index Suite during the last three-and-five year annualized basis.  *Id.* at ¶ 131.  Despite the demonstrated underperformance of the Plan's funds, Defendants failed to investigate these lower cost Fidelity alternative investments during the Class Period, which cost the Plan and its participants millions of dollars.  *Id.* at ¶ 134.

****

Considering the totality of the above factors, the Court reached the conclusion that Plaintiffs had stated a plausible claim for breach of fiduciary duty.  The *CommonSpirit* and *TriHealth* complaints did not allege these extensive facts or allegations.  Accordingly, the Sixth Circuit's decision in those matters do not invalidate the Court's motion to dismiss order.

Defendants argue "the Sixth Circuit's clarified standard plainly bars four of five Plaintiffs' claims, and the dismissal of those four claims will significantly narrow the scope of Plaintiffs' class action claims."  Motion to Stay at 1.  As stated above, the Sixth Circuit pronounced no such specific standard in *CommonSpirit*.  Before the ink on its *CommonSpirit* opinion dried, the Sixth Circuit issued the *TriHealth* decision making clear that, in appropriate cases, plaintiffs may proceed with ERISA breach of fiduciary duty claims alleging selection and retention of imprudent investment options.

In rejecting Defendants' arguments, the *TriHealth* court noted that in "*Hughes v. Northwestern University*, **the Supreme Court rejected a bright line rule**, derived from *Hecker* and *Loomis*, that a broad menu of funds could itself defeat an imprudence claim premised on one particular offering that performed poorly or had high fees." *Id.* 2022 WL 2708993, at *6 (citing 142 S. Ct. at 742) (emphasis added).  This is contrary to Defendants' suggestion that "in *Smith*,

10

the Sixth Circuit definitively clarified the pleading standard for Plaintiffs' claims." Defs. Mem. at 3. The *TriHealth* court also rejected an alternative explanation for TriHealth's choice to offer retail shares: revenue sharing. The court stated: "The theory merely provides a competing inference for why TriHealth offered retail-class funds. Revenue sharing remains 'one plausible inference, but it is not the only one.'" *Id*. at *7 (quoting *Davis*, 960 F.3d at 483). Thus, *TriHealth* demonstrates that the Sixth Circuit did not intend to create any bright line rule in *CommonSpirit* that would deny plaintiffs the ability to state a claim for excessively investment options.

The Sixth Circuit's narrow, case specific decisions in *CommonSpirit* and *TriHealth* are unlikely to have any bearing on the motion to dismiss already considered by this Court here.[4]

### H.  Certification of the August 9, 2021 Order for Interlocutory Appeal Is Inappropriate

Contrary to Defendants' arguments, the Court's August 9, 2021 Order does not meet the requirements of 28 U.S.C. § 1292(b) to warrant certification of the Order for interlocutory appeal. A district court may certify an order for interlocutory appeal if the following three conditions exist: "[1] the order involves a controlling question of law to which there is [2] substantial ground for

---

[4] After the Sixth Circuit issued its decisions in *CommonSpirit* and *TriHealth*, the District of Maryland entered an Order in line with this Court's August 9, 2021 denial of Defendants' motion to dismiss. In *Moler v. Univ. of Maryland Medical Sys., et al.*, No. 1:21-cv-01824-JRR (D. Md. July 13, 2022) as here, the plaintiffs alleged the plans' funds underperformed both cheaper comparator funds and their benchmark indices over several years. *See Moler*, 2022 WL 2756290, at *4. In denying the defendants' motion to dismiss, the court distinguished *Commonspirit*, finding, "Plaintiffs' allegations are far more robust than those in *Smith*, where Smith essentially relied on a thin charge that there may have been better options out there." *Id.* at *5. Rather, the court concluded, "Plaintiffs' allegations go beyond reliance upon other investments that outperformed the selected funds. Plaintiffs complain that the funds at issue underperformed, using other investments as a comparator, and that Defendants' continued inclusion of the underperforming funds amounts to imprudence in violation of Defendants' duties." *Id.* Here, Plaintiffs similarly allege that, measured against several different benchmarks, Defendants selected and retained excessively expensive and chronically underperforming investment options for the Plan. FAC ¶¶ 58-134.

difference of opinion and … [3] an immediate appeal may materially advance the termination of litigation." 28 U.S.C. § 1292(b).

While a complaint's sufficiency is a question of law, here, the second factor requiring "substantial ground for difference of opinion" is not met.  "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed."  *Reese v. BP Exploration, Inc.*, 6433 F.3d 681, 688 (9th Cir. 2011). "Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent."  *Id.*

The legal issues in this case are not novel.  The question raised by Defendants in their motion to dismiss is whether Plaintiffs adequately alleged their claims that Defendants breached their fiduciary duties under ERISA in their administration of the Plan.  This is a case specific, fact intensive inquiry that this Court already considered last year.  In *In re Trump*, which Defendants rely, the court permitted appeal of its partial denial of defendants' motion to dismiss to consider whether plaintiffs alleged "a facially valid claim and, if so, whether the First Amendment applies to bar the claim here." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017).  Unlike in *Trump*, Defendants are not suggesting that a particular statute would outright bar Plaintiffs' claims. Rather, here, the issue is only whether Plaintiffs have alleged enough facts to adequately plead a claim for breach of ERISA's fiduciary duties *in this case*.  The fact that the Sixth Circuit concluded the plaintiffs in *CommonSpirit* and *TriHealth* did not allege facts to meet their pleading requirements in those specific cases does not automatically require reevaluation of Plaintiffs' claims here.  Plaintiffs address this case's distinctions from *CommonSpirit* and *TriHealth supra.*

Neither case is instructive here.  Thus, Defendants cannot demonstrate that the issues presented here are so novel that "fair-minded jurists might reach contradictory conclusions."

**V.      CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' motion for partial reconsideration in its entirety, as well as deny Defendants' request to certify the order on Defendants' motion to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: August 4, 2022                          Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
Gabrielle Kelerchian
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile:  (717) 233-4103
Email: markg@capozziadler.com
            gabriellek@capozziadler.com

Donald R. Reavey
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

**CERTIFICATE OF COMPLIANCE**

1.      I certify that this brief complies with LCivR 7.2(b)(i) because this brief contains 3,850 words, excluding the parts of the brief exempted by LCivR 7.2(b)(i), using Microsoft Office 365 Word.

2.      I certify that this brief complies with the typeface requirements of LCivR 7.2(b)(ii) and the type style requirements of LCivR 7.2(b)(ii) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word Times New Roman 12 point font.

Dated: August 4, 2022                              */s/ Mark K. Gyandoh*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2022, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  /s/ *Mark K. Gyandoh*
Mark K. Gyandoh, Esq.