# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

JOSHUA GARCIA, ANDREA P. BRANDT )
and HOWARD HART, individually and on )
behalf of all others similarly situated, )     Civil Action No. 1:20-cv-01078
                                         )     Hon. Paul L. Maloney
                           Plaintiffs,   )     Mag. Phillip J. Green
                                         )
               v.                        )
                                         )
ALTICOR, INC., THE BOARD OF              )
DIRECTORS OF ALTICOR, INC., THE          )
FIDUCIARY COMMITTEE OF ALTICOR,          )
INC., and JOHN DOES 1-30,                )
                                         )
                          Defendants.    )


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF
<u>SETTLEMENT CLASS, AND APPROVAL OF PLAN OF ALLOCATION</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ...................................................................................................2

        A.      Procedural History .................................................................................2

        B.      Discovery ...............................................................................................4

        C.      Settlement Negotiations .........................................................................5

        D.      The Proposed Settlement .......................................................................6

        E.      The Notice Plan Has Been Effectively Implemented .............................7

III.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED ......................9

        A.      Legal Standards......................................................................................9

        B.      The Settlement Satisfies the Sixth Circuit's Test Underscoring Its
                Fairness, Reasonableness, and Adequacy .............................................10

                1.      The risk of fraud or collusion.....................................................10

                2.      The complexity, expense and likely duration of the litigation .................10

                3.      The amount of discovery engaged in by the parties ..................12

                4.      The likelihood of success on the merits.....................................13

                5.      The opinions of class counsel and class representatives............15

                6.      The reaction of absent class members .......................................16

                7.      The public interest.....................................................................18

IV.     THE REQUIREMENTS OF FED. R. CIV. P. 23(e)(2) IS SATISFIED..........19

        A.      Effectiveness of Plan Distribution .........................................................19

        B.      Terms of Proposed Attorneys' Fees.......................................................19

        C.      Equitable Treatment of Class Members..................................................20

V.      THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED.......21

VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ..........21

VII.   CONCLUSION.................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Beach v. JPMorgan Chase Bank, N.A.*,
No. 17-cv-563, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) ......................................22

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020).........................................................................20

*In re BellSouth Corp. ERISA Litig.*,
No. 02-cv-2440, 2006 WL 431178 (N.D. Ga. Dec. 5, 2006) ........................................14

*Boley v. Universal Health Servs., Inc.*,
36 F.4th 124 (3d Cir. 2022) .......................................................................................22

*Borders v. Alternate Solution Health Network, LLC*,
No. 20-cv-1273, 2021 WL 4868512 (S.D. Ohio May 17, 2021)................................12, 15, 18, 20

Brent v. Midland Funding, LLC,
No. 11-cv-01332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) .................................10

*In Re Broadwing*, Inc. ERISA Litigation
252 F.R.D. (S.D. Ohio 2006) .....................................................................................18

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) .............................................................................17

*Carr v. Guardian Healthcare Holdings, Inc.*,
No. 20-cv-6292, 2022 WL 501206 (S.D. Ohio Jan. 19, 2022)............................................*Passim*

*Cassell v. Vanderbilt Univ.*,
No. 16-cv-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018)..................................22

*Cates v. Trustees of Columbia Univ.*,
No. 16-cv-06524, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021)....................................20

*Cunningham v. Cornell Univ.*,
No. 16-cv-6525, 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) .......................................22

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................*Passim*

Does 1–2 v. Déjà Vu Servs., Inc.,
925 F.3d 886 (6th Cir. 2019) ...............................................................................8, 13

*Doe v. Ohio,*
No. 91-cv-464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ........................................................9

*Dover v. Yanfeng US Automotive Interior Systems I LLC,*
No. 20-cv-11643, 2023 WL 2309762 (E.D. Mich. Mar. 1, 2023)....................................11, 13, 14

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
No. 15-cv-22782, 2017 WL 7798110 (S.D. Fla. Dec. 18, 2017)...........................................15, 20

*Forman v. TriHealth, Inc.,*
40 F.4th 443 (6th Cir. 2022) ....................................................................................................3 ,14

*Ganci v. MBF Inspection Services, Inc.,*
No. 15-cv-2959, 2019 WL 6485159 (S.D. Ohio Dec. 3, 2019)........................................10, 18, 20

*Garner Prop. & Mgmt., LLC v. City of Inkster,*
No. 17-cv-13960, 2020 WL 4726938 (E.D. Mich. Aug. 14, 2020)...........................13, 15, 16, 17

*Granada Investments, Inc. v. DWG Corp.,*
962 F. 2d 1203 (6th Cir. 1992) ...................................................................................................9

*Griffin v. Flagstar Bancorp, Inc.*
2013 WL 6511860 (E.D. MI) ........................................................................................15, 19, 21

*Iannone et al., v. Autozone, Inc., et al.,*
No. 19-cv-02779-MSN-tmp (W.D. Tenn. Dec. 07, 2022)............................................................22

*In re Ikon Office Solutions, Inc., Securities Litig.,*
194 F.R.D. 166 (E.D. Pa. 2000)..................................................................................................21

*IUE-CWA v. Gen. Motors Corp.,*
238 F.R.D. 583 (E.D. Mich. 2006) .............................................................................................17

*Jacobs v. Verizon Communications, Inc. et al.,*
No. 16-cv-1082, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) ...................................................22

*Jones v. H&J Restaurants, LLC,*
No. 19-cv-105, 2020 WL 6877577 (W.D. Ky. Nov. 23, 2020).......................................................9

*Karg v. Transamerica Corp.,*
2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) ..........................................................................22

*Karpik v. Huntington Bancshares Inc.,*
No. 17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ............................................*Passim*

*Kruger v. Novant Health, Inc.*,
No. 14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)......................................................20

*Law v. National Collegiate Athletic Ass'n*,
108 F.Supp.2d 1193 (D. Kan. 2000) ..........................................................................................21

*McDonald v. Edward Jones*,
791 Fed.Appx. 638 (8th Cir. 2020)...........................................................................................20

*Millstein v. Holtz*,
No. 21-cv-61179, 2022 WL 18024840 (S.D. Fla. Dec. 30, 2022)................................................20

*Mullins v. Data Management Co.*,
No. 20-cv-214, 2021 WL 2820560 (S.D. Ohio June 21, 2021)..........................................9, 18, 20

*Nunez v. B. Braun Med., Inc.*,
2023 WL 5339620 (E.D. Pa. Aug. 18, 2023) ..............................................................................14

*Nunez v. B. Braun Medical, Inc.*,
No. 20-cv-04195 (E.D. Pa. June 30, 2022)................................................................................22

*In re Packaged Ice Antitrust Litig.*,
Case No. 08-md-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................................20

*Peck v. Air Evac EMS, Inc.*,
No. 18-cv-615, 2019 WL 3219150 (E.D. Ky. July 17, 2019) ........................................................9

*Pizarro v. Home Depot, Inc.*,
No. 18-cv-01566, 2020 WL 6939810 (N.D. Ga. Sept. 21, 2020)................................................22

*Pledger v. Reliance Trust Co.*,
No. 15-cv-4444, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021) ..............................................11, 20

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011) .....................................................................................................13

*In re Prandin Direct Purchaser Antitrust Litigation*,
No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ..............................................20

*Ramos v. Banner Health*,
No. 15-cv-2556, 2020 WL 6585849 (D. Colo. Nov. 10, 2020)...................................................11

*Sacerdote v. New York Univ.*,
No. 16-cv-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ....................................................21

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012)........................................................11

*Shy v. Navistar Int'l Corp.*,
No. 92-cv-00333, 2022 WL 2125574 (S.D. Ohio June 13, 2022).......................................*Passim*

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 12-cv-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ....................................................20

*Smith v. Commonspirit Health*,
37 F.4th 1160 (6th Cir. 2022) .................................................................................................3, 14

*Stengl v. L3Harris Technologies*,
No. 22-cv-572 (M.D. Fla. June 5, 2023) .......................................................................................22

*In re Suntrust Banks, Inc. ERISA Litig.*,
No. 08-cv-03384, 2016 WL 4377131 (N.D. Ga. Aug. 17, 2016) ..................................................22

*Swigart v. Fifth Third Bank*,
No. 11-cv-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014)..................................................18, 20

*UAW v. GMC*,
497 F.3d 615 (6th Cir. 2007) ............................................................................................9, 13, 14

*Vassalle v. Midland Funding LLC*,
708 F.3d 747 (6th Cir. 2013) .........................................................................................................8

*Vellali v. Yale Univ.*,
33 F.R.D. 10 (D. Conn. 2019).......................................................................................................22

*Wachala v. Astella US LLC*,
No. 20-cv-3882, 2022 WL 408108 (N.D. Ill. Feb. 10, 2022) .......................................................21

*In re Wachovia Corp. ERISA Litig.*,
No. 09-cv-262, 2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) ....................................................11

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) .......................................................................................................15

## STATUTES

28 U.S.C. § 1292(b) .......................................................................................................................3

29 U.S.C. § 1104.............................................................................................................................3

FED. R. CIV. P. 23.......................................................................................................................8, 21

FED. R. CIV. P. 23(b)(1) ................................................................................21

FED. R. CIV. P. 23(e) ....................................................................................21

FED. R. CIV. P. 23(e)(2) ...........................................................................19, 20

FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) ........................................................19

FED. R. CIV. P. 23(e)(2)(c)(iv) ......................................................................19

FED. R. CIV. P. 23(e)(2) (D) ..........................................................................19

FED. R. CIV. P. 23(g).......................................................................................21

**Other Sources**

1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 at 90 (4th Ed. 2002). 10

Employee Retirement Income Security Act of 1974 ............................................*Passim*

Restatement (Third) of Trusts § 100 cmt. b(1) ........................................................ 14

## I.     INTRODUCTION

On July 10, 2024, the Court preliminarily approved the Settlement in this Action, which provides for the creation of a $1,510,000.00 Settlement Fund. *See* ECF No. 122 ("Preliminary Approval Order"). The Court's Preliminary Approval Order also, *inter alia*, modified the previously certified Class as a Settlement Class and appointed Plaintiffs as class representatives and Capozzi Adler, P.C. ("Capozzi Adler") as Class Counsel. *Id*. Class Counsel for the Settlement Class and Plaintiffs believe each of these findings in the Preliminary Approval Order should be made final because the proposed Settlement represents an outstanding recovery. In particular, the Settlement represents roughly 12% of the potential best-case damages as calculated by Plaintiffs. This Settlement was achieved after months of vigorous arms-length negotiations between counsel experienced in ERISA class actions and with the aid of two mediation sessions, one with a third-party private mediator, Robert A. Meyer of JAMS, and a subsequent settlement conference with United States Magistrate Judge Green.

The Settlement Class has received full and fair notice of the terms of the Settlement through individualized direct mail along with a dedicated internet Settlement website, and toll-free number in accordance with the Preliminary Approval Order. After mailing the approved form of Notice of Class Action Settlement to the approximately 9,012 potential Settlement Class members, there have thus far been only three purported objections that do not adequately address the merits of the Settlement.[1]  Accordingly, Plaintiffs respectfully request this Court to enter the

---

[1] The objections are addressed below. Per the schedule established by this Court in the Preliminary Approval Order, the objection deadline has not yet elapsed. *See* ECF No. 122, ¶ 9 (setting November 4, 2024 – "no later than fourteen days before the date of the Fairness Hearing" - as the objection deadline). To the extent any other objections are filed regarding the Settlement or requested attorneys' fees, or any other aspect of the Settlement, Class Counsel will address the objection(s) in a supplemental filing to this Court in advance of the Final Approval Hearing no later than November 11, 2024. *Id*.

proposed Final Approval Order and Judgment approving the Settlement.

While Defendants do not agree with all averments and statements made in the instant memorandum, Defendants agree with the ultimate relief sought by Plaintiffs and submit that the Court should approve the settlement in this matter.

## II.    BACKGROUND[2]

### A.    Procedural History

Prior to initiating this action, Plaintiffs conducted informal discovery by investigating publicly filed Plan documents, reviewing Plaintiffs' Plan information, and consulting with experts. *See* Gyandoh Decl. at ¶ 24. On June 16, 2020, before filing their complaint, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA. *Id*. at ¶ 25. Defendants responded by providing numerous documents on July 15, 2020, which Plaintiffs reviewed. *Id*. at ¶ 26. Plaintiffs subsequently filed a complaint on November 9, 2020. *See* ECF No. 1. The Complaint alleged violations of fiduciary duties of prudence and loyalty imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). *See id*. Defendants filed a Motion to Dismiss on February 19, 2021 (ECF No. 9), and a Corrected Motion to Dismiss on March 3, 2021. *See* ECF No. 11. Plaintiffs filed their Brief in Opposition to the Motion to Dismiss and supporting documents on April 16, 2021. *See* ECF Nos. 14-16. Defendants filed their Reply in Support of the Motion to Dismiss on May 19, 2021. *See* ECF No. 20. On August 9, 2021, this Court issued an Order denying Defendants' Motion to Dismiss. Defendants filed their Answer to Complaint and Affirmative Defenses on September 21, 2021. *See* ECF No. 27. The Parties filed a Joint Motion for Approval of Mediator) on November 17, 2021. *See* ECF No. 34.

---

[2] The full procedural history of this matter is recounted in the Declaration of Mark Gyandoh ("Gyandoh Decl.") at ¶¶ 3-23.

This Court issued an Order Approving Agreed Upon Mediator on November 29, 2021(ECF No. 35), and issued Notice of Appointment of Facilitative Mediator on December 3, 2021, appointing Robert A Meyer, Esquire as Mediator. *See* ECF No. 36.

On July 19, 2022, Defendants filed a Motion for Partial Reconsideration of the Court's Order Denying Defendants' Motion to Dismiss, or, in the Alternative, to Certify the Order on Defendants' Motion to Dismiss for Interlocutory Appeal Under 28 U.S.C. § 1292(b). *See* ECF No. 39. Defendants' Motion was made in light of the Sixth Circuit's decisions in *Smith v. Commonspirit Health*, 37 F.4th 1160 (6th Cir. 2022) and *Forman v. TriHealth, Inc.*, 40 F.4th 443 (6th Cir. 2022). On July 19, 2022, Defendants also filed a Motion to Stay Further Litigation Pending Resolution of Defendants' Motion for Partial Reconsideration, or, in the Alternative, to Certify the Order on Defendants' Motion to Dismiss for Interlocutory Appeal Under 28 U.S.C. § 1292(b). *See* ECF No. 40. On August 2, 2022, Plaintiffs filed their Brief in Opposition to Defendants' Motion to Stay (ECF No. 42), and on August 4, 2022, Plaintiffs filed their Brief in Opposition to Defendants' Motion for Partial Reconsideration. *See* ECF No. 43. On August 11, 2022, Defendants filed their Reply in Support of Defendants' Motion for Partial Reconsideration. *See* ECF No. 46. On August 23, 2022, this Court denied Defendants' Motion for Reconsideration. *See* ECF No. 47.

Plaintiffs filed their Motion for Class Certification and supporting exhibits on January 6, 2023. *See* ECF Nos. 56-58. On March 6, 2023, the Parties filed a Joint Stipulation and Order Regarding Class Certification. *See* ECF No. 59. This Court approved the Stipulation and Order Regarding Class Certification on March 8, 2023. *See* ECF No. 60.

Defendants filed a Motion for Summary Judgment on September 15, 2023. *See* ECF Nos. 80-85. Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion for

Summary Judgment on November 9, 2023. *See* ECF 89. On December 7, 2023, Defendants filed a Reply in Support of Motion for Summary Judgment. *See* ECF No. 93. On April 16, 2024, this Court issued its Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment. *See* ECF No. 113. The Court granted Defendants' motion to exclude Plaintiffs' expert and motion for summary judgment with regards to Plaintiffs' recordkeeping claims and two of the investment funds challenged by Plaintiffs. *Id*. The Court denied Defendants' motions regarding the remaining challenged funds. *Id*.

### B.    Discovery

On December 1, 2021, Plaintiffs served Initial Disclosures. *See* Gyandoh Decl. at ¶ 27. On February 16, 2022, Defendants served Initial Disclosures. *Id*. at ¶ 28. On September 12, 2022, Defendants served their First Set of Interrogatories and First Request for Production of Documents. *Id*. at ¶ 29. On October 4, 2022, Plaintiffs served their First Set of Interrogatories and First Request for Production of Documents on Defendants. *Id*. at ¶ 30. On October 6, 2023, Plaintiffs served their Responses to Defendants' First Requests for Interrogatories and Requests for Production of Documents. *Id*. at ¶ 31. On November 3, 2022, Defendants served their Responses and Objections to Plaintiffs' First Interrogatories and Requests for Production of Documents. *Id*. at ¶ 32.

Discovery led to the production of approximately 12,117 pages of documents and the taking of five fact witness and one expert witness depositions. *Id*. at ¶ 35. Plaintiff Garcia was deposed on November 7, 2022, Plaintiff Hart was deposed on November 8, 2022, and Plaintiff Brandt was deposed on December 9, 2022. *Id*. Michael Mohr, Defendants' 30(b)(6) witness, was deposed on December 1, 2022 in both his individual and 30(b)(6) capacity, and Plaintiffs' Expert, Eric Dyson, was deposed on May 5, 2023. *Id*.

4

C.    **Settlement Negotiations**

The Parties first attempted to settle this matter on August 17, 2023, via a voluntary mediation session with Robert A. Meyer of JAMS, who is well-versed and experienced in mediating ERISA matters. Gyandoh Decl., ¶¶ 36-37; *see also* curriculum vitae of Mr. Meyer at https://www.jamsadr.com/meyer/. Although the mediation did not result in a settlement, it did provide each party with an understanding of the other party's respective strengths and weaknesses. However, the mediation session occurred before the close of expert discovery and this Court's summary judgment ruling.

On April 30, 2024, after this Court's motion for summary judgment decision, the Parties attended a settlement conference with Magistrate Judge Phillip J. Green. *Id.* at ¶ 42. The Parties exchanged offers and counter offers ahead of the settlement conference. *Id.* at ¶¶ 38-41. The settlement conference was a success, and on April 30, 2024, the Court was informed that the Parties reached a settlement. *See* ECF Nos. 115-17.

Throughout this process, Plaintiffs, through counsel, consulted with experts regarding the extent of damages the Plan sustained as a result of Defendants' alleged breaches of fiduciary duty. The Parties reached a settlement after reviewing all of the relevant information, including documents produced by Defendants, and both parties evaluating numerous damages scenarios. Following the Court's dismissal of several of Plaintiffs' claims, and taking into consideration Defendants' analysis presented during the two mediation sessions, Plaintiffs ultimately determined realistic maximum potential damages from their perspective to be $12 to $14 million. And this amount assumes Plaintiffs would be victorious on the issue of liability, and the Court would adopt Plaintiffs' measure of damages. Throughout the litigation, however, Defendants strongly denied any liability or resulting damages.

The Parties arrived at a settlement in principle, settling this matter for $1,510,000.00. The Settlement Agreement, inclusive of exhibits, was finalized and executed as of July 1, 2024. *See* ECF No. 121-1. Based on the aforementioned negotiations and exchange of information, the Parties were able to negotiate a fair settlement that they believe to be in their respective best interests. It is Plaintiffs' counsel's opinion that the proposed settlement is fair and reasonable. Gyandoh Decl. ¶75.

### D.      The Proposed Settlement

Through arm's length negotiations and discovery, Alticor (or its insurers) will pay $1,510,000.00 – the Gross Settlement Amount – to be allocated to participants on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action, described in Article 7 of the Settlement Agreement. The Settlement Agreement also provides for non-monetary relief, providing that "Within five (5) years after the Settlement Effective Date, if the Plan's fiduciaries have not already done so, the Plan's fiduciaries will conduct or cause to be conducted a request for proposal relating to the Plan's recordkeeping services." *See* Gyandoh Decl., ¶ 47; Settlement Agreement Article 12.

The Gross Settlement Amount will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Case Contribution Awards if awarded by the Court. Gyandoh Decl., ¶ 48. The Settlement Class is defined (as modified by the Court's Preliminary Approval Order) as:

> All persons, except individual Defendants and their immediate family members, who were participants in or beneficiaries of the Amway Retirement Savings Plan at any time during the Period November 9, 2014 through July 10, 2024 ("Class Period"), and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.

6

Preliminary Approval Order, ECF No. 122, ¶ 1.

Plaintiffs and Settlement Class members will provide a release and covenant-not-to-sue to Defendants and the other Released Parties covering the claims which were or could have been asserted in the Action based on the facts alleged in the Complaint filed in this case. *See* Settlement Agreement at §§ 1.40, 1.41, Article 7.

### E.    The Notice Plan Has Been Effectively Implemented

Pursuant to the Preliminary Approval Order, Class Counsel has overseen the issuance of the Court-approved Class Notice. Class Counsel retained Analytics LLC ("Analytics") to serve as settlement and notice administrator. *See* Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval signed by Jeffrey Mitchell ("Analytics Decl.") (attached as Exhibit 2 to the Gyandoh Declaration). On July 12, 2024, Defendants provided Analytics with spreadsheets containing, among other information, the names, mailing addresses, and social security numbers for a total of 9,012 unique Settlement Class Members. Analytics Decl., ¶¶ 6, 7. Notice was mailed on August 14, 2024. *Id.* Analytics updated the Settlement Class member address information by conducting a "skip trace" and then cross-referencing the addresses with the U.S. Postal Service National Change of Address database. Analytics Decl., ¶ 7. As of October 4, 2024 "out of 9,012 Notices … only 194 (approximately 2.15%) were ultimately undeliverable as of the date of this declaration." *Id.* at ¶ 11. Analytics also emailed the Settlement Notice to the Settlement Class members on August 9, 2024. *Id.* at ¶ 8.

Accordingly, the notice program was extremely successful. The notice program apprised Settlement Class members of the terms of the Settlement, and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses. The Class Notice

was also posted on a dedicated website – www.AlticorERISAsettlement.com (launched on August 9, 2024) – through which the public, and the Plan's current and former participants could view: "(1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download; (4) contact information for Class Counsel and the Defendants' Counsel; and (5) email, phone, and U.S. mail contact information for Analytics." *See* Analytics Decl., ¶ 12. On August 9, 2024 Analytics also established a case-specific toll-free number for Settlement Class members to call to obtain information regarding the Settlement.  Analytics Decl., ¶ 13.

As the Sixth Circuit has noted:

> Additionally, we have held that "due process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 900 (6th Cir. 2019) (*quoting Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013)). Here the notice program includes direct mail notice to absent class members, reaching close to a 100% success rate, and is supplemented by a settlement website and a toll-free telephone number, thus constituting the "best notice practicable." *See Shy v. Navistar Int'l Corp.,* No. 92-cv-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) ("The notice program provided Class Members with a clear and concise statement of their rights. The notices directed Class Members to the settlement website or a toll-free number for additional information regarding how they could object to the settlement. The notice program more than met the requirements of Rule 23 and due process.") (citations omitted); *Carr v. Guardian Healthcare Holdings, Inc.*, No. 20-cv-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) ("According to Analytics, 479 of the 490 Class Members, or 97.8%, received the notice. This

reflects well on the notice process used in this case.)" Indeed, the Court previously found the combination of the direct-mail Class Notice and dedicated Settlement website and phone number was adequate to inform Settlement Class members of the terms of the proposed Settlement, how to lodge an objection, and how to obtain additional information. *See* Preliminary Approval Order.

## III.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A.    Legal Standards

When assessing whether a proposed settlement "is fair, reasonable, and adequate", Courts within the Sixth Circuit evaluate seven "UAW Factors":

(1) the risk of fraud or collusion;
(2) the complexity, expense and likely duration of the litigation;
(3) the amount of discovery engaged in by the parties;
(4) the likelihood of success on the merits;
(5) the opinions of class counsel and class representatives;
(6) the reaction of absent class members; and
(7) the public interest

*Peck v. Air Evac EMS, Inc.*, No. 18-cv-615, 2019 WL 3219150, *7 (E.D. Ky. July 17, 2019) (citing *UAW v. GMC*, 497 F.3d 615, 641 (6th Cir. 2007)). "The Court 'enjoys wide discretion in assessing the weight and applicability of these factors.'" *Doe v. Ohio*, No. 91-cv-464, 2020 WL 728276, at *3 (S.D. Ohio Feb. 12, 2020) (citing *Granada Investments, Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205-06 (6th Cir. 1992)).

Futhermore, there is an overriding public interest in settling litigation, particularly in class actions. *See, e.g., Peck*, 2019 WL 3219150, at *8 ("There is a strong policy favoring settlement in class actions."); *Jones v. H&J Restaurants, LLC*, No. 19-cv-105, 2020 WL 6877577, at *3 (W.D. Ky. Nov. 23, 2020) ("Courts in this Circuit reason that settlement is often in the public interest because it puts an end to what are sometimes complex and unpredictable cases and because settlement promotes judicial economy."); *Mullins v. Data Management Co.*, No. 20-cv-214, 2021

WL 2820560, *4 (S.D. Ohio June 21, 2021) ("There is an especially strong presumption in favor of voluntary settlements in class actions ... where substantial judicial resources can be conserved by avoiding formal litigation.") (internal citations omitted.)

### B.    The Settlement Satisfies the Sixth Circuit's Test Underscoring Its Fairness, Reasonableness, and Adequacy

#### 1.    The risk of fraud or collusion

In the Sixth Circuit settlements are presumed fair unless evidence proves otherwise. "Settlements resulting from arm's length negotiations conducted by competent counsel are *prima facie* fair." *Shy*, 2022 WL 2125574, *6 (S.D. Ohio June 13, 2022) (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 at 90 (4th Ed. 2002)); *see also Carr*, 2022 WL 501206, at *5 ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."); *Karpik v. Huntington Bancshares Inc.*, No. 17-cv-1153, 2021 WL 757123 at * 4 (S.D. Ohio Feb. 18, 2021) (same); *In re Delphi Corp. Sec., Derivative & ERISA Litig*., 248 F.R.D. 483, 501 (E.D. Mich. 2008) (same). Here, the proposed Settlement was only achieved after contentious motion to dismiss and summary judgment briefing, months of arms-length negotiations with a neutral mediator and magistrate judge, and exchanging numerous damages scenarios. Gyandoh Decl. ¶¶ 3-23. This settlement is not the result of fraud or collusion.

#### 2.    The complexity, expense and likely duration of the litigation

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Shy*, 2022 WL 2125574, *6 (quoting *Brent v. Midland Funding, LLC*, No. 11-cv-01332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011). Courts consider a settlement appropriate when it will "result in the saving of time and money to the Parties and serve judicial economy." *Ganci v. MBF Inspection Services, Inc.,* No. 15-cv-2959, 2019 WL 6485159, at *4 (S.D. Ohio Dec. 3, 2019). And like *Ganci*, without a settlement this case

would endure "additional pre-trial motions, case management conferences and hearings, and trial preparation, which would result in the expenditure of many additional hours of effort" with the potential for additional lengthy and risky appellate proceedings. *Id*. Many courts in this Circuit and around the country have found ERISA cases are especially complex. *See, e.g.*, *Dover v. Yanfeng US Automotive Interior Systems I LLC,* No. 20-cv-11643, 2023 WL 2309762, at *5 (E.D. Mich. Mar. 1, 2023) ("ERISA class actions are complex, and the record shows that counsel fought ably to vindicate their clients' interests in the face of rapidly evolving law regarding fiduciary duties under ERISA."); *Karpik*, 2021 WL 757123, at *4 ("The complexity inherent in class actions is amplified in ERISA class actions"); *Pledger v. Reliance Trust Co.*, No. 15-cv-4444, 2021 WL 2253497, at *7 (N.D. Ga. Mar. 8, 2021) ("[e]ffectively and successfully litigating an ERISA breach of fiduciary action requires a specialized knowledge and expertise that was demonstrated by Class Counsel. This litigation involved highly technical knowledge of investment plans, investment knowledge, and industry practices."); *Ramos v. Banner Health*, No. 15-cv-2556, 2020 WL 6585849, at *4 (D. Colo. Nov. 10, 2020) ("ERISA is 'an enormously complex and detailed statute.'"); *In re Schering-Plough Corp. Enhance ERISA Litig*., No. 08-cv-1432, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012) ("ERISA class actions based on the same theories as the present matter involve a complex and rapidly evolving area of law."); *In re Wachovia Corp. ERISA Litig.*, No. 09-cv-262, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011) ("ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources.").

This Action has been litigated for over two and a half years, including two mediations, a motion to dismiss, a Motion for Reconsideration on the Motion to Dismiss, Motions for Summary

11

Judgment and significant and meaningful discovery. Indeed "trials on the ERISA issues presented have been few and far between and the few decisions on summary judgment and adjudications on the merits in this area demonstrate the heavy burdens that Plaintiffs might ultimately have to face if the case were not resolved by settlement." *In re Delphi Corp.*, 248 F.R.D. at 497.

The Settlement Agreement provides a greater benefit to Class Members than the complexity, expense, and duration of continued litigation.

### 3.    The amount of discovery engaged in by the parties

This factor weighs in favor of approving the settlement because "the Parties have engaged in sufficient and substantial discovery, both formal and informal, that allows them to understand their respective positions." *Shy*, 2022 WL 2125574, *6. Discovery thus far includes the documents Plaintiffs' Counsel investigated before filing the complaint, informal discovery, approximately 12,117 pages of documents exchanged by the parties. *See* Gyandoh Decl., ¶¶ 35. Further, each of the Plaintiffs were deposed by Defendants' counsel and a 30(b)(6) corporate designee was deposed by Class Counsel. In evaluating this factor, Courts consider "not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Carr*, 2022 WL 501206, at *5. More than enough discovery has been conducted to allow Plaintiffs and Defendants to understand their respective positions and calculate accurate damages models. *See, e.g. Borders v. Alternate Solution Health Network, LLC*, No. 20-cv-1273, 2021 WL 4868512 at *3 (S.D. Ohio May 17, 2021) ("Defendant has culled and furnished voluminous timesheets and other data to Plaintiff during the course of discovery, which gave parties a better handle on the strengths and weaknesses of their respective cases. The parties aver that, absent settlement, continued litigation will require much more discovery and briefing, possibly a trial and even an appeal."); *Carr*, 2022 WL 501206, at *6 ("the Court finds that the parties engaged in substantial

investigation. The parties exchanged written discovery and relevant information, including payroll and other wage data for Defendant in order for the parties to construct a proper damages model and perform an appropriate Expected Value calculation."). In the analogous ERISA case, *Dover v. Yanfeng US Automotive Interior Systems I LLC.*, the court found this factor satisfied because "counsel's preliminary investigation included reviewing Yanfeng's annual reports, auditors' reports, and participants' account statements, as well as interviewing plan participants. Counsel also reviewed thousands of pages of non-public materials regarding the plan provided by the Defendants, including meeting agendas, meeting minutes, fiduciary reviews, fund analysis supplements, participant fee disclosures, and other disclosures" *Dover,* 2023 WL 2309762, at *3. Here, Counsel has done the same and more. The discovery conducted by the parties supports the fairness, reasonableness, and adequacy of the settlement.

### 4.    The likelihood of success on the merits

The proposed settlement is fair, reasonable, and adequate in this case in light of the risks of further litigation and the likely maximum amount of recovery if the case was litigated to its conclusion on the merits. "Of the *UAW* factors, '[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.'" *Déjà Vu Servs*., 925 F.3d at 895 (*quoting Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.,* 636 F.3d 235, 245 (6th Cir. 2011)); *see also Shy*, 2022 WL 2125574, *6 (same); *Carr*, 2022 WL 501206, at *6 (same). However, "[t]he court 'is not to decide whether one side is right or even whether one side has a better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute.'" *Garner Prop. & Mgmt., LLC v. City of Inkster,* No. 17-cv-13960, 2020 WL 4726938, at *9 (E.D. Mich. Aug. 14,

13

2020) (*quoting UAW*, 497 F.3d at 632.) This matter, like many ERISA matters, involved competing factual interpretations and complicated questions of law. As the Court in *Dover* aptly stated

> "The key questions in this case turn on an assessment by a factfinder of whether defendants and other plan fiduciaries breached their duties of prudence regarding certain investment fund options. As evidenced by recent Sixth Circuit decisions, such as *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), and *Forman v. TriHealth, Inc.*, 40 F.4th 443 (6th Cir. 2022), the law regarding fiduciary duties under ERISA is nuanced and rapidly developing. The certainty provided by the monetary settlement in this case outweighs the risks of Plaintiffs potentially receiving nothing if the matter were to proceed to trial."

*Dover*, 2023 WL 2309762, at *3; *see also In re Delphi Corp.*, 248 F.R.D. at 496-97 ("Plaintiffs admit that risk is inherent in any litigation, particularly class actions. The risk is even more acute in the complex areas of ERISA law"); *In re BellSouth Corp. ERISA Litig.*, No. 02-cv-2440, 2006 WL 431178, at *5 (N.D. Ga. Dec. 5, 2006) ("the rapid influx of new [ERISA] precedents presents an ever changing legal landscape, and there is a constant risk that the law will change before judgment."). *Karpik*, 2021 WL 757123, at *5 ("Even if Plaintiffs established a fiduciary breach, it is 'difficult' to measure damages in cases alleging imprudent or otherwise improper investments.") (*quoting* Restatement (Third) of Trusts § 100 cmt. b(1)).

Lastly, the undersigned is particularly qualified to realistically evaluate the risks of continued litigation, as he tried an analogous case to an unfavorable verdict for plaintiffs in *Nunez v. B. Braun Med., Inc.*, 2023 WL 5339620 (E.D. Pa. Aug. 18, 2023). *See* Gyandoh Decl., ¶ 75. The Settlement Agreement guarantees immediate relief for the Class and avoids serious risks of further proceedings shrinking, eliminating, or prolonging relief.

### 5.    The opinions of class counsel and class representatives

"The Sixth Circuit has observed that when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference." *Shy*, 2022 WL 2125574, *7 (*quoting Williams v.*

*Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983)). Both Plaintiffs' counsel and Defendants' counsel are experienced in ERISA class actions of this type and approve of the Settlement. As discussed in greater detail in the Gyandoh Declaration, the vast experience of Class Counsel in analogous actions weighs strongly in favor of the fairness of the proposed Settlement, a Settlement which Class Counsel firmly stands behind. *See* Gyandoh Decl., ¶¶ 62-73. Counsel for Defendants, Jackson Lewis P.C., are one of the preeminent firms in the country defending analogous ERISA class actions. *See* https://www.jacksonlewis.com/services/erisa-complex-litigation. Courts within the Sixth Circuit have similarly found this factor met when counsel on both sides believe the settlement is fair and reasonable. *See, e.g. Borders*, 2021 WL 4868512, at *3 ("By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate" and "[t]he Court gives great weight to the beliefs of experienced counsel"); *Garner Prop. & Mgmt*., 2020 WL 4726938, at *9 ("Class Counsel are experienced class action litigators and believe that the benefits of settlement outweigh the risk of continued litigation and the costs that would be incurred."); *Griffin,* 2013 WL 6511860, at *5 ("Class counsel in this case have extensive experience in handling complex ERISA claims, and other complex class action litigation… Class counsel's recommendation of this settlement is entitled to significant weight.").

The Class Representatives who have dedicated time and energy to this matter also find the Settlement fair, reasonable and adequate. This weighs in favor of approval. *See, e.g. Karpik*, 2021 WL 757123, at *6 ("Moreover, the Class Representatives previously submitted declarations in support of the Settlement. *See* ECF Nos. 67-07 to 67-13. Their support also favors approval."); *Ganci*, 2019 WL 6485159, at * 5 ("Class Plaintiff also approves of the settlement, as indicated by his executing the settlement agreement."). Lastly, it is noteworthy that the settlement was reached

15

under the guidance of an ERISA experienced mediator and the magistrate judge. *See, e.g., Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-cv-22782, 2017 WL 7798110, at *2 (S.D. Fla. Dec. 18, 2017) (approving a settlement where "the parties retained a highly qualified ERISA lawyer as their private mediator to assist them in negotiating the Settlement. The Parties were well-represented by highly experienced counsel with class and complex litigation experience, and counsel have represented to this Court that they recommend the fairness of the Settlement.").

Because counsel for both Parties, Class Representatives, and the magistrate judge, support this Settlement Agreement, this factor is satisfied.

### 6.    The reaction of absent class members

Class Notice was mailed to over 9,012 potential Settlement Class Members and to date only three objections have been lodged.[3]  With due respect to the Settlement Class members who took the time to send in their objections, none of the objections come close to challenging the fairness of the Settlement.

The first objector, Mr. Larry A. West, does not actually object to the Settlement but seeks to opt out under the mistaken belief that he was not a participant in the Plan during the Class Period.  ECF No. 123.  The records available indicate that Mr. West is a part of the Settlement Class and that is why he received notice of the Settlement.  But importantly, the Settlement Class is certified as a non-opt out class so Mr. West does not have the ability to exclude himself from the Settlement.

Next, Ms. Katherine Pierce objects to the Settlement generically without actually

---

[3]  As noted above, the objection deadline is November 4, 2024. *See* ECF No. 122, ¶ 9 Any additional objections will be addressed in Plaintiffs' supplemental filing due on November 11, 2024. *Id*.

addressing the facts alleged in this Action or the Sixth Circuit factors the Court must consider in evaluating the fairness of the Settlement.  *See* ECF No. 125.  Accordingly, Ms. Pierce's objection also lacks merit.

Lastly, Ms. Marie Ann Tomac does not object to the Settlement, but the amount of attorneys' fees being sought.  *See* ECF No. 126.  Like the other objectors, Ms. Tomac does not base her objection on Sixth Circuit authority, or any authority for that matter.  As discussed below and in Plaintiffs' Renewed Motion for An Award of Attorney's Fees and Reimbursement of Expenses and Case Contribution Awards and supporting Memorandum of Law being filed contemporaneously herewith ("Fee Motion"), the attorneys' fees sought in this case are in line with attorneys' fees awarded in analogous actions.

The fact that a small number of Settlement Class members lodged an objection is not surprising as "[a] certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Garner Prop. & Mgmt.*, 2020 WL 4726938, at *10. (*quoting In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003)); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (Approving settlement when there were "very few objections to the parties' Settlement. Out of more than 32,000 class members, only 37 individuals—about one-tenth of one percent—submitted 34 objections."); *Carr*, 2022 WL 501206, at *7 ("the Class Members' reactions strongly support approval. No Class Member requested exclusion from the settlement or objected to the settlement."); *In re Delphi Corp.,* 248 F.R.D. at 501 (same); *Shy*, 2022 WL 2125574, *7 (same); *Ganci*, 2019 WL 6485159, at *5 (same); *Borders*, 2021 WL 4868512, at *4 ("only two class members opted out and none objected to the Settlement, resulting in a class inclusion rate of approximately 99.5%. As such, this factor strongly supports

17

approval."). Thus, this factor weighs in favor of Settlement Approval.

### 7.    The public interest

Settlement of this case is in the best public interest. In general, "[p]ublic policy favors settlement of class action lawsuits." *Mullins,* 2021 WL 2820560, *6 (*quoting Swigart v. Fifth Third Bank*, No. 11-cv-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014)). *See also, Borders*, 2021 WL 4868512, at *4 (same). Specifically, regarding ERISA matters, "[p]rotecting retirement funds of workers is of genuine public interest." *In Re Broadwing*, 252 F.R.D. at 381-82. Courts within this Circuit find this factor satisfied when "the Agreement provides class members immediate relief, avoids further litigation, and frees the Court's judicial resources" *Id*.; *see also Ganci*, 2019 WL 6485159, at *5 ("In this case, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources. The undersigned therefore finds that this factor favors approving the settlement."); *Carr*, 2022 WL 501206, at *7 ("The settlement provides relief to the Class Members, avoids further litigation in a complex case, and frees the Court of expending further judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the settlement."). As mentioned above, this case involves complex issues and without a settlement would remain in the judicial system for a lengthy duration at the risk of lessor or no relief to Plan participants. Thus, the public benefit of settling this case weighs in favor of finding the settlement fair, reasonable, and adequate.

## IV.    THE REQUIREMENTS OF FED. R. CIV. P. 23(e)(2) IS SATISFIED

Under FED.R.CIV.P. 23(e)(2), the Court is to consider when determining whether to grant final approval the following factors: (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (2) "the terms of any proposed award of attorney's fees, including timing of payment"; and (3) whether "the proposal

treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).[4]

### A.    Effectiveness of Plan Distribution

The proposed Plan of Allocation, described *infra* in Section V., describes a plan of allocating the Net Settlement Amount to Class Members utilized in other analogous ERISA matters and is highly effective. Current Plan participants – those who still maintain accounts in the Plan – will have payments made directly into their accounts. Former participants – those who no longer maintain a Plan account – shall be paid directly by the Settlement Administrator.

### B.    Terms of Proposed Attorneys' Fees

The Settlement does not excessively compensate Class Counsel. The Settlement is not contingent on Class Counsel receiving a specific amount of fees and any fees they receive will be determined by the Court. The amount of fees Class Counsel is requesting, a third of the monetary portion of the Settlement, is reasonable and consistent with the awards in other ERISA cases. This amount is in line with analogous awards in ERISA class action cases so the requirement of Rule 23(e)(2)(C)(ii) will likely be met. *See, e.g., Griffin,* 2013 WL 6511860, at *8 ("This requested fee is consistent with standard fee awards as a percentage of the fund in ERISA actions which typically award between 30% and 33% on a percentage of the fund fee calculation.").[5]

---

[4] There are no agreements other than the Settlement Agreement, thus FED. R. CIV. P. 23(e)(2)(c)(iv) is irrelevant.

[5] *See also Ganci,* 2019 WL 6485159, at *6 (awarding one third of the common fund); *In re Packaged Ice Antitrust Litig.,* Case No. 08-md-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (same); *In re Prandin Direct Purchaser Antitrust Litigation,* No. 10-cv-12141, 2015 WL 1396473, *4 (E.D. Mich. Jan. 20, 2015) (same); *Swigart v. Fifth Third Bank,* 2014 WL 3447947, at *7; *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-cv-83, 2014 WL 2946459, at *1-3 (E.D. Tenn. June 30, 2014) (same); *Borders,* 2021 WL 4868512 at *4 (same); *Karpik*, 2021 WL 757123, at *7(same); *Mullins,* 2021 WL 2820560, at *6 (same); *Pledger*, 2021 WL 2253497 (same); *Fernandez,* 2017 WL 7798110, at *4 (same); *McDonald v. Edward Jones,* 791 Fed.Appx. 638,

## C.    Equitable Treatment of Class Members

The Settlement does not unduly favor the Plaintiffs. Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the losses to their Plan account. Further, the Plan of Allocation agreed to by the Parties clearly treats Class Members equitably relative to each other because each member is entitled to their pro rata share of losses and all Settlement Class members will receive at least $10.00. This pro rata allocation method is commonly deemed equitable in ERISA cases. *See, e.g., Karpik,* 2021 WL 757123 at *13; *In re Delphi Corp*., 248 F.R.D. at 491–93; *Millstein v. Holtz*, No. 21-cv-61179, 2022 WL 18024840, at*7 (S.D. Fla. Dec. 30, 2022). While Plaintiffs also intend to request Case Contribution Awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount and the amount Plaintiffs intend to request is in line with the awards in other cases as explained in the Fee Motion.

Given the above, Rule 23(e)(2) is satisfied.

## V.    THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED

"Approval of a plan of allocation of a settlement fund in a class action is 'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *Griffin,* 2013 WL 6511860, at *7 (*quoting In re Ikon Office Solutions, Inc., Securities Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Law v. National Collegiate Athletic Ass'n*, 108 F.Supp.2d 1193, 1195 (D. Kan. 2000).

---

640 (8th Cir. 2020) (affirming judgment awarding the class counsel attorneys' fees of 1/3 of the settlement fund); *Kruger v. Novant Health, Inc.*, No. 14-cv-208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Cates v. Trustees of Columbia Univ.*, No. 16-cv-06524, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) (listing ERISA cases awarding one-third of settlement fund). *See also* Fee Motion.

The proposed Plan of Allocation here, attached to the Settlement Agreement as Exhibit B, is premised on calculating a Settlement Class member's distribution on a *pro rata* basis based on account balances, a proxy for the alleged losses. No payment to any Settlement Class member shall be smaller than ten dollars ($10.00). Any Settlement Class Member whose payment pursuant to Section D of the Plan of Allocation is less than ten dollars ($10.00) shall receive a distribution of ten dollars ($10.00). *See* Plan of Allocation at Section D. Further, current participants will receive their share of the Settlement Fund through a distribution to their Plan account. *Id*. at Section E.

## VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.    The Proposed Class Meets the Requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure

Since entry of the Preliminary Approval Order, nothing has changed in the record to compel the Court to now reach a different conclusion with respect to the final approval of the Settlement Class. Indeed, courts across the country have determined breach of fiduciary duty claims under ERISA analogous to those at issue in this action are uniquely appropriate for class treatment.[6] To avoid unnecessary repetition, Plaintiffs incorporate their arguments from their

---

[6] *See, e.g., Sacerdote v. New York Univ*., No. 16-cv-6284, 2018 WL 840364, *6 (S.D.N.Y. Feb. 13, 2018) ("Most ERISA class action cases are certified under Rule 23(b)(1)."); *Wachala v. Astella US LLC*, No. 20-cv-3882, 2022 WL 408108, at * 1 (N.D. Ill. Feb. 10, 2022) (certifying claims brought pursuant to ERISA § 502(a)(2)); *Nunez v. B. Braun Medical, Inc.*, No. 20-cv-04195 (E.D. Pa. June 30, 2022) (same); *Stengl v. L3Harris Technologies*, No. 22-cv-572 (M.D. Fla. June 5, 2023) (same); *Pizarro v. Home Depot, Inc*., No. 18-cv-01566, 2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) (same); *Boley v. Universal Health Servs., Inc*., 36 F.4th 124 (3d Cir. 2022) (same); *In re Suntrust Banks, Inc. ERISA Litig*., No. 08-cv-03384, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016) (same); *Iannone et al., v. Autozone, Inc., et al.*, No. 19-cv-02779-MSN-tmp (W.D. Tenn. Dec. 07, 2022) (same); *Jacobs v. Verizon Communications, Inc. et al.*, No. 16-cv-1082, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) (same); *Karg v. Transamerica Corp.*, 2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) (certifying class alleging defendants breached fiduciary duties by selecting poorly performing investment options); *Vellali v. Yale Univ*., 33 F.R.D. 10 (D. Conn. 2019) (certifying class in case alleging fiduciaries saddled retirement plan with investment options that charged excessive management fees); *Cunningham v. Cornell Univ*., No. 16-cv-6525, 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) (same*); Beach v. JPMorgan Chase Bank, N.A.*, No. 17-cv-563,

memorandum in support of preliminary approval[7] and request the Court make the same findings it did in the Preliminary Approval Order certifying the following Settlement Class as:

> All persons, except individual Defendants and their immediate family members, who were participants in or beneficiaries of the Amway Retirement Savings Plan at any time during the Period November 9, 2014 through July 10, 2024 ("Class Period"), and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.

Preliminary Approval Order, ¶ 1.

## VII.    CONCLUSION

For the reasons set forth above, the Settlement meets the standard for final approval under Rule 23. Accordingly, Plaintiffs seek an Order: (1) approving the Class Action Settlement Agreement under FED. R. CIV. P. 23(e); (2) certifying the above-defined Settlement Class; (3) appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel under FED. R. CIV. P. 23(g); (4) finding the manner in which the Settlement Class was notified of the Settlement was the best practicable under the circumstances and fair and adequate; and (5) approving the Plan of Allocation.

Dated: November 25, 2024                    Respectfully submitted,

                                            **CAPOZZI ADLER, P.C.**

                                            */s/ Mark K. Gyandoh*
                                            Mark K. Gyandoh, Esquire
                                            (admitted *pro hac vice*)
                                            312 Old Lancaster Road
                                            Merion Station, PA 19066
                                            Tel: (610) 890-0200
                                            Fax : (717) 233-4103
                                            Email: markg@capozziadler.com

---

2019 WL 2428631 (S.D.N.Y. June 11, 2019) (same); *Cassell v. Vanderbilt Univ.*, No. 16-cv-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) (same).

[7] *See* ECF No. 120, p. 6, incorporating by reference Plaintiffs' memorandum and supporting declarations in support of their motion for class certification (ECF Nos. 56-58).

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 25, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:     *<u>/s/ Mark K. Gyandoh</u>*
   Mark K. Gyandoh, Esq.

23